PARKER SWEEPER COMPANY,
Plaintiff-Appellee,

v.

The E. T. RUGG COMPANY,
Defendant-Appellant.

No. 72–1664.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1972.

Decided Feb. 27, 1973.

Robert E. Stebens, Columbus, Ohio, on brief for appellant; Mahoney, Miller & Stebens, Columbus, Ohio, of counsel.

Stanley H. Foster and Charles H. Melville, Cincinnati, Ohio, for appellee; Melville, Strasser, Foster & Hoffman, Cincinnati, Ohio, of counsel.

Before EDWARDS, CELEBREZZE and KENT, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant Rugg appeals from the District Court's findings of validity of two Parker Sweeper patents, Patent No. 3,035,294 (hereafter '294) and Design Patent No. 194,051 (hereafter '051), and from a judgment granting damages for infringement and enjoining Rugg from further infringement.

The crucial issue in this appeal concerning the '294 patent is whether or not Parker's combination patent for a towable, dumpable lawn-leaf sweeper is invalid because the invention it claimed was obvious under the then existing state of the art to one skilled in the art. Although the issue is not without difficulty, we conclude that the combination patent '294 is invalid for obviousness.

At the outset we note that if the equities between these two adverse parties were all that was at issue, the balance in this record would strongly favor appellee Parker Sweeper for all the reasons cited by the District Judge. Appellant Rugg appeared to the District Judge (and appears to us) deliberately to have copied Parker Sweeper's commercially successful product. Appellant Rugg prevails not because of merit in its conduct, but because of the national policy of rewarding with patent monopoly only those advances which can properly be characterized as "inventions." U.S.Const. art. I, § 8; 35 U.S.C. §§ 101, 102, 103 (1970); Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1850).

The record in this case appears to us to present no important dispute of fact.

On the heels of the development of the small tractor and a lawn mower suitable for towing behind it, a need became apparent for a grass or leaf sweeper which could be similarly employed. Such sweepers were readily available in the art for adaptation to small tractors. But as the president of Parker Sweeper Company testified, they were difficult to dump, since most could be emptied only by turning them over or by lifting out some form of basket or bailing liner. Until Parker's sweeper (patented under the numbers '294 as to structure and '051 as to design) was placed on the market, there was no sweeper which the tractor operator could operate and dump at a desired spot without dismounting. With the production and marketing of Parker's '294 sweeper beginning in 1960, its sales of sweepers skyrocketed from 200 per year to over 13,000 per year. Understandably, Parker was concerned when appellee Rugg Company in 1966 began to manufacture a very similar sweeper and to sell it to Sears, Roebuck under the latter's Craftsman label. After warning Rugg of its claims of patent infringement, Parker began the instant litigation by a complaint alleging infringement by Rugg of both its patents and seeking injunctive relief and damages.

The case was tried fully and it appears to this court that only legal issues remain. With the exception of the last sentence of finding 17 (which we believe to be a conclusion of law), we accept the careful findings of fact of the District Judge. They certainly are not "clearly erroneous"—the standard by which we review them. Fed.R.Civ.P. 52; American Saint Gobain Corp. v. Armstrong Glass Co., 434 F.2d 1216, 1218 (6th Cir. 1970).

As we have indicated, we also agree with the District Judge that the Parker sweeper met the test of utility fully and had sufficient differences in its method of combination of previously known elements to pass the test of novelty.

Nor do we find any fault with the District Judge's statement of the law applicable to a determination of "obviousness":

A three-step test has been established by the Sixth Circuit in determining the question of what constitutes "obviousness." Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp., 445 F.2d 911 [6th Cir. 1971]. The first step is a factual determination of the prior art; second, a factual determination of what, if any, improvement the patentee has made over the prior art; and third, a legal question of whether the improvement would have been obvious to one skilled in the art. Additionally, the Supreme Court in Graham v. John Deere Company, 383 U.S. 1, [86 S.Ct. 684, 15 L.Ed.2d 545] (1965), has indicated secondary considerations such as commercial success, long felt but unsolved needs, failures of others, etc., as relevant indicia of obviousness or non-obviousness. Such secondary considerations might also be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

The rationale of the District Judge and of the appellees in dealing with the obviousness test is set forth as follows in the last sentence of finding 17:

The prior art as set forth in the above patents does not appear to be, both collectively and individually, the subject matter therein such as would make the patent in question obvious to a person having ordinary skill in the art.

As we have indicated above, this sentence appears to be the ultimate conclusion of law which the District Judge subsequently supported with this reasoning under the heading of Conclusions of Law:

The state of the prior art has been indicated by the parties through the introduction in evidence of nine patents. They fall naturally into two categories; those of modern origin concerned exclusively with a non-dumpable manually pushed sweeper,

and those of the nineteenth century addressed primarily to the unique problems of that era. The teachings of the prior art do include elements of the patent in question. It would be difficult indeed to imagine a mechanical device for the removal of debris and the deposit of such debris in a receptacle for later emptying that would not follow certain basic physical principles. The combination, however, of such established elements with a useful and novel result does create a patentable device, even though the elements of the combination are old and well known.

The District Judge and appellants also rely strongly upon secondary considerations and the presumption of validity of a patent once issued:

> The secondary considerations referred to in Deere reinforce the nonobviousness of plaintiff's patent. The move to suburbia following World War II created the enormous and profitable home lawn and garden industry. The riding tractor made grass cutting chores substantially easier. There was needed only some device to remove the grass clippings after cutting during the summer and fallen leaves in the autumn. These tasks continued to be manual, time-consuming, and unpleasant. Defendant as a manufacturer of lawn mowers would have been at least cognizant of this problem. The fact is, however, that neither defendant nor anyone else solved this problem until plaintiff marketed its product and the depth of the felt need was immediately apparent. An increase in sales in excess of 6,000% is probably the best evidence available as to the commercial success of this invention.

> The law is clear that a patent once issued is presumed valid, (35 U.S.C. § 282) and that a heavy burden of proof rests upon the party attempting to prove invalidity. Westwood Chemical, Inc. v. Owens-Corning, *supra* [445 F. 2d 911 (6th Cir. 1971)].

■ Accepting, as we do, the findings of fact of the trial judge and the applicability of both the secondary considerations and the presumption just referred to, we are still unable to agree that the resulting product was "nonobvious" within the meaning of the constitutional and statutory scheme.

We believe this record and the District Judge's findings require the conclusion that *every* element critical to this patent was anticipated in one or more of the nine patents as to which the parties stipulated. Although appellant's claims describe the sweeper brush and the mechanism which rotates it, it is too clear for argument that these features are anticipated by all nine of the described patents and many other sweepers.

The only "novelty" arguably described in the claims pertains to the dumping mechanism of the '294 sweeper. This is described in Claim 3:

> (3) A lawn sweeper, comprising in combination, a cart including a frame having spaced, upright side sections, axle means at the front of the frame, wheels on said axle means, axle means at the rear of the frame, wheels on the second mentioned axle means; a machine head carried by the front of the frame between the side sections and including a rotatable work element; bearing means adjacent the top and rear of each section of the frame sections and disposed forwardly of the rear wheels, the axes of said bearing means being aligned and disposed transversely of the direction of movement of the cart on the wheels; an open front and open top debris receptable disposed between the frame sections and including axle means cooperating with the bearing means for pivotally supporting the debris receptacle, the axle means for the debris receptacle lying forwardly of the center of gravity of the receptacle in all positions to which the receptacle can be moved.

The '294 sweeper is pictured below— the top picture with the receptable in dumping position and the bottom in sweeping position.

May 22, 1962          T. P. R. STOUT ET AL          3,035,294

SWEEPER WITH HAND ACTUATED REAR DUMPING DEBRIS RECEPTACLE

Filed Aug. 17, 1959                    2 Sheets—Sheet 1

Fig.2

Fig.1

INVENTORS
THEOPHILUS P. R. STOUT
WARNER HOUSER
BY
Schmieding & Fultz
ATTORNEY

Reduced to plain English, what this dumping device amounts to is a basket with an open top and front mounted on a frame behind a sweeper brush mechanism which propels swept debris into the basket. The basket is suspended from an axle mounted on pivots on the top part of the frame so that the tractor operator may empty the loaded basket by pulling on a rope attached to the top of the rear side of the basket, thus causing the basket to tip or rotate forward on its axle, thereby dumping the debris through the open front of the basket. Upon release of the rope, the force of gravity returns the basket to its debris-receiving position.

Neither the basket, nor the frame, nor the axle, nor the pivot, nor the rope are claimed to be novel or patentable. The claim, of course, is that the combination of these elements as portrayed above is both ingenious and nonobvious, and that it met a felt need and achieved great commercial success.

We do not denigrate the importance of Parker's device merely because it is involved in the unglamorous task of waste removal. Waste removal is one of the most important of man's problems and its importance increases with the size of population and the complexity of our civilization. Waste removal is, however, also one of the most ancient of man's problems and as the District Judge noted, "It would be difficult indeed to imagine a mechanical device for the removal of debris and the deposit of such debris in a receptacle for later emptying that would not follow certain basic physical principles."

Indeed, a number of the patents in the prior art demonstrated important aspects of Parker's combination.

The Anderson street sweeper (Pat. No. 457,693, District Court Exhibit A-4) shows gravity return of the receptable after dumping. Specification forming part of Letters Patent No. 457,693, p. 2, lines 37–42, Aug. 11, 1891, Appendix p. 34.

The receptacle in the Tilton street sweeper (Patent No. 517,709, District Court Exhibit A-6) returned of its own weight to sweeping position after dumping. Specification forming part of Letters Patent No. 517,709, p. 1, lines 45–63, April 8, 1894, Appendix p. 38.

The receptacle employed in the Reynolds street sweeper (Patent No. 542,571, District Court Exhibit A-10) was "pivotably hung on pins secured in the sides of the frame." In addition its receptacle was adapted to "swing downwardly at its front end . . . and upwardly at its rear end to discharge the contents of the [receptacle] in the rear of the brushes between the wheels of the sweeper." Specification forming part of Letters Patent No. 542,571, p. 1, lines 54–64, July 9, 1893, Appendix p. 42.

In the Rogers street sweeper patent (Patent No. 548,659, District Court Exhibit A-11), the receptacle is referred to as the "receiver." Its function is described thus:

The receiver 21 is adapted to be dumped at will, and for this purpose is mounted upon horizontal trunnions 22, supported on the ends of hangers 23, which project down from a crossbar 23a on the main frame of the machine. This receiver 21 being thus adapted to be inverted may be moved to bring the receiving opening on the bottom, in order to empty its contents, by drawing a chain 24, whose upper end is held at convenient reach, as at 25. By the shape of the receiver 21 it is held in normal position by reason of its rear projection 26 and makes a tight connection with the collector 20 and receiver 21 and at the same time affords a stop for the receiver in its return movement by curved edges 27, 28, against which the edges of the opening of receiver 21 abut. Specification forming part of Letters Patent No. 548,659, p. 1, lines 61–76, October 29, 1895, Appendix p. 48.

The Gleason lawn mower patent (Patent No. 703,650, District Court Exhibit A-15) discloses a dumpable receptacle which operates on much the same basic principle as the Parker dumping mechanism. Its receptacle follows the rotary mower which is towable. The dumping mechanism can be operated from the seat of a horse drawn mower. Dumping is accomplished, as it is with the Parker sweeper, by inverting the receptacle on its pivots. Specification forming part of Letters Patent No. 703,650, p. 2, lines 51–66, July 1, 1902, Appendix p. 57.

More could be added to this demonstration that every important element and every important function of the Parker sweeper had been employed in some machine at some time for some purpose. We do not ignore the facts that 1) frequently the receptacles referred to above were differently shaped to accomplish different purposes, 2) street sweepers operate differently from lawn sweepers, 3) hand pushed sweepers operate differently from power towed sweepers, and 4) that no one of the prior art patents shows all of the features of the Parker sweeper in the same combination.

■ What we do hold is that the state of the art included all of these patents and that a skillful mechanic setting out to build a towable dumpable lawn sweeper to be used in connection with a lawn mower tractor in the early 1960's could accomplish his mission without adding any "invention" to the art.

Article I, § 8 of the Constitution provides in part: "Congress shall have Power . . . To promote the Progress of Science and [the] useful Arts by securing for limited Times to . . . Inventors the exclusive Right to their respective . . . Discoveries." In pursuance of this authority Congress has adopted a statute which describes "invention" as to which a patent monopoly may issue in terms of "novelty," "utility," and "nonobviousness." 35 U.S.C. §§ 101, 102, 103 (1970).

We agree with the District Court that Parker's lawn sweeper passed the first two tests of novelty and utility. It still must survive the test of Sec. 103 which provides: "A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. . . ." 35 U.S.C. § 103 (1970). As Mr. Justice Black put the matter in 1964: "To begin with, a genuine 'invention' or 'discovery' must be demonstrated 'lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art.'" Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 230, 84 S.Ct. 784, 788, 11 L.Ed.2d 661 (1964), and cases cited therein. It is against these standards that we review the validity of the instant patent and find it wanting.

As a matter of law, we hold that the Parker sweeper patent '294 is invalid because this record demonstrates a failure to meet the nonobviousness test of 35 U.S.C. § 103 (1970).

■ We likewise conclude that the Parker sweeper design patent '051 is invalid.

The statute under which this patent was issued provides:

### § 171. Patents for designs

Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided. July 19, 1952, c. 950, § 1, 66 Stat. 805. 35 U.S.C. § 171 (1970).

In the leading case dealing with design patents the United States Supreme Court set the standards for review of patentability of a design:

The acts of Congress which authorize the grant of patents for designs were plainly intended to give encouragement to the decorative arts . . . . And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form. The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public. It therefore proposes to secure for a limited time to the ingenious producer of those appearances the advantages flowing from them. . . . It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. . . .

We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other. Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 524–525, 528, 20 L.Ed. 731 (1871).

The issue in *Gorham* was Gorham's claim that its design patent was infringed. But this court has applied the *Gorham* "ordinary observer" standard to the issue of validity of a design patent.

A design patent must be possessed of novelty; the adaptation of old devices to new purposes, however convenient or useful they may be in their new role, is not invention. . . . The degree of difference required to establish novelty occurs when the average observer takes the new design for a different, and not a modified already existing design. . . . The fact that a design may be distinguished from those found in the prior art does not import the required novelty and ornamentation; its overall aesthetic effect must represent a step which has required inventive genius beyond a prior art. Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 226 F.2d 207, 212 (6th Cir. 1955).

Appellants claim that Parker Sweeper's '051 patented design is extremely similar in appearance to two of Parker's own sweepers which had long been on the market. We reproduce below four exhibits, the first being the Parker Sweeper '051 design under challenge and then three prior designs in the prior art:

Parker Sweeper - Design Patent No. 194,051
D. Ct. Exh. 6.

Prior Art.  Dunham Sweeper
Patent No. 2,727,264 - D. Ct. Exh. A-23

Prior Art. Parker Sweeper
Patent No. 2,700,783 - D. Ct. Exh. A-22

Prior Art. Parker Sweeper
Patent No. 2,737,673. D. Ct. Exh. A-25

959

We recognize, of course, that the '051 design differed from the others in both size and framing. But tested by the *Gorham* standard as applied in *Thabet* to the eye of the ordinary observer, the designs must be regarded as substantially the same. Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871); Tappan Co. v. General Motors Corp., 380 F.2d 888 (6th Cir. 1967); Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 226 F.2d 207 (6th Cir. 1955).

The judgment of the District Court is reversed and the case is remanded for entry of an order dismissing the complaint on the ground that both patents at issue are invalid.