David F. COLE, Plaintiff-Appellant
and Cross-Appellee,

v.

SEARS, ROEBUCK & COMPANY,
Defendant-Appellee and
Cross-Appellant.

Nos. 74–2235, 74–2236.

United States Court of Appeals,
Sixth Circuit.

Aug. 19, 1975.

Charles B. Lyon, Donnelly, Maky, Renner & Otto, Cleveland, Ohio, for David Cole.

Warren Daane, Baker, Hostetler & Patterson, Cleveland, Ohio, George F. Lee, F. Vern Lahart, Johnson, Dienner, Emrich & Wagner, Chicago, Ill., for Sears.

Before PHILLIPS, Chief Judge, and EDWARDS and ENGEL, Circuit Judges.

EDWARDS, Circuit Judge.

This patent case involves two patents on a vertical meat broiler designed by plaintiff Cole. He claims that both patents have been infringed by an allegedly similar broiler designed and sold by Sears, Roebuck but not under patent or license.

Both the patented device and the accused device look very much like two different very familiar forms of household toasters enlarged to about twice the usual toaster size. And it seems to this court, although not to appellant Cole, that they worked in much the same way.

The District Judge who heard this case spent most of his time and effort on the question of infringement. After a careful analysis of the testimony and exhibits, he found that there was no infringement, and as to this issue plaintiff appeals. The District Judge also found, however, that both patents were valid, and on this issue defendant Sears, Roebuck cross-appeals.

Patent No. 2,913,976 (hereafter '976) in addition to describing a vertical broiler in general terms, provides for a device to hold the meat as it is cooked between the heating units in the broiler.

Patent No. 3,091,171 (hereafter '171) in addition to repeating most of the claims of '976, also provided for "a series of slots provided in the bottom of the outer shell about the drip tray for admittance of ambient air." The purpose of this was to reduce smoke and fumes from broiling.

■ As to the District Judge's findings of fact and conclusions of law concerning Cole's Patent '976, our review of this record leaves us in agreement. The District Judge properly construed this combination patent on a meat holder (where there was already considerable prior art) strictly in accordance with the express language of its only novel element.[1] *See Cuno Engineering Corp. v. Automatic Devices Corp.,* 314 U.S. 84, 92, 62 S.Ct. 37, 86 L.Ed. 58 (1941); *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Thus narrowly construed he held that Patent '976 while valid, had neither been practiced by Cole nor infringed by Sears, Roebuck. His findings of fact on these issues are not clearly erroneous and his conclusions of law are valid. As to both issues we affirm for the reasons stated in the District Judge's Memorandum Opinion and Order dated June 26, 1974.

■ As to Cole's Patent '171, we have also reviewed the briefs, record and the District Judge's opinion as to both validity and infringement. We observe for purposes of possible Supreme Court review that if this patent were to be held valid, then we would in all respects affirm the District Judge's findings and his conclusions of noninfringement. The Sears' construction is basically different from Cole's. While this would end the litigation between the parties, the Supreme Court has instructed the federal courts to examine the issue of patent validity whenever it is presented. *Sinclair & Carroll Co. v. Interchemical Corp.,* 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945); *Hieger v. Ford Motor Co.,* 516 F.2d 1324 (6th Cir. 1975). Our examination of Cole's Patent '171 leads to reversal of the District Judge's finding of validity.

■ Elements 1 and 2 of Claim 1 of Patent '171 read as follows:

1. An electric broiler comprising an outer substantially completely closed shell;

2. Having feet which space the bottom thereof above a support surface;

In rejecting plaintiff's claim of patentability as to these elements, in addition to noting that these features are disclosed in the Jepson (No. 2,368,026) and Bonzagni (No. 2,030,047) patents, we observe that millions of toasters have been constructed in accordance with the structure which elements 1 and 2 describe. And certainly the conversion of a toaster to a broiler was obvious to one skilled in the art. *See Parker Sweeper Co. v. E. T.*

---

1. We have read with fascination the following critical paragraph from plaintiff-appellant Cole's brief:

    Plaintiff [Cole] has admitted that his commercialized structure having a hinge at the bottom of the grids was within the scope of claim 12 (DX E, App. II 144). Such hinge at the bottom of the grids results in the Cole meat holder having " . . . hinged connected handle portions interconnecting corresponding ends of the rods for manipulating the same, said rods and grids being otherwise free of interconnection to permit opening of the holder . . . ." (App. I 132).

    Such claim element does not require the hinge to be in a specific location, and a hinge at the bottom of the grids or a hinge at the ends of the handles will provide the hingedly connected handle portions defined. Therefore, contrary to the Court's finding, claim 12 is not a paper patent and thus does not need to be strictly construed.

    We observe that the words quoted above from Claim 12 simply cannot be construed to apply to a holder hinged at the bottom of the grid (in place of the handles at the top) without ravishing this already tortured specimen of the English language.

*Rugg Co.,* 474 F.2d 950 (6th Cir.), *cert. denied,* 414 U.S. 829, 94 S.Ct. 56, 38 L.Ed.2d 63 (1973).

The only possible novel elements in the claims (as opposed to the prior art of the Jepson and Bonzagni patents) we find to be contained in elements 7, 8 and 9 of Claim 1 which read as follows:

7. And a series of ports provided in the bottom of the outer shell about the drip tray for admittance of ambient air;

8. Convection currents being produced in operation of the broiler proceeding from said ports upwardly through the inner shell and over the heating elements to the top slot of the outer shell;

9. With such upward circulation of air being effective to eliminate smoking of grease particles contacting the heating elements which would occur in a broiling operation without such flow of air.

If these elements mean only that you construct the broiler so that it lets unspecified quantities of air in at the bottom of the toaster "about the drip tray" whereupon heat convection leads said air over the heating units, elements 7, 8 and 9 then represent only the obvious application of a principle well known in this art (and many others) and a principle disclosed by both the Jepson and Bonzagni patents. 35 U.S.C. § 103 (1970).

If on the other hand, as plaintiff-appellant Cole contends, the air induction system through the "slots" about the drip pan depends for its effectiveness on the number, size and location of said slots, such features must be disclosed both as limitations upon the patent and as means of teaching its art. 35 U.S.C. § 112 (1970). Finding no such specifics in these broadly stated elements, we hold, as we did in *Kaiser Industries Corp. v. McLouth Steel Corp.,* 400 F.2d 36 (6th Cir. 1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969), and *Philips Industries, Inc. v. State Stove & Mfg., Inc.,* 522 F.2d 1137, at 1140–1141 (6th Cir. 1975) that the patent is invalid for lack of particularity in the claims as required by 35 U.S.C. § 112 (1970):

The patent law does not require a prospective inventor to search so far in attempting to determine the scope of a patent and the areas left open for inventive inquiry. Section 112 provides that it is the claims that shall *particularly point out* and *distinctly* claim the subject matter of the patentee's invention. Certainly, terms used in the claims can gain meaning from the specifications or from the knowledge attributable to one skilled in the art. But a prospective inventor is required to go no further in attempting to determine the invention claimed and the areas foreclosed to future enterprise.

\*      \*      \*      \*      \*      \*

In our view of this case, the Appellants ask this Court to ignore the precision of definition required of them by the statute. As the Supreme Court noted in *Union Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232 (1942), to allow claims "so indefinite as not to give the notice required by the statute would be in direct contravention of the public interest which Congress \* \* \* recognized and sought to protect." In that case the Court considered a product patent where the distinction from the prior art was a matter of degree. The Court rejected terms, such as "substantially pure", "commercially uniform", and "comparatively small", that gave no standard for comparison or were so indefinite as to have no established meaning to one skilled in the art. *Kaiser Industries Corp. v. McLouth Steel Corp., supra* at 50–51.

As to this last issue, the judgment of the District Court is reversed and in all other respects said judgment is affirmed.