**AMERICAN SEATING COMPANY,**
Plaintiff,

v.

**NATIONAL SEATING COMPANY,**
Defendant.

**Civ. A. No. C75–63A.**

United States District Court,
N. D. Ohio, E. D.

Sept. 30, 1976.

F. Rush McKnight, Calfee, Halter & Griswold, Cleveland, Ohio, Lloyd A. Heneveld, Grand Rapids, Mich., for plaintiff.

Charles B. Lyon, John W. Renner, Donnelly, Maky, Renner & Otto, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

The above captioned cause of action came on for trial before this Court from February 13, 1976 through February 25, 1976. The following shall constitute this Court's findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## THE PARTIES

Plaintiff American Seating Company (hereinafter American) brings this action asserting patent infringement of its United States Letters Patent No. 3,729,226 (hereinafter '226) issued April 24, 1973, against defendant National Seating Company (hereinafter National). Defendant has answered American's complaint, alleging non-infringement and invalidity, and has counterclaimed asserting the same defenses.

Plaintiff is a Delaware corporation, having its principal place of business in Grand Rapids, Michigan. Chester J. Barecki, the inventor of the '226 Patent, is an employee of American who has been involved in the transportation field since the 1940's.

Defendant National is a subsidiary of National City Lines. National makes only recliner type inter-city passenger bus seats today, although at one time it made both intra-city and inter-city type bus seats.

## PENDING MOTIONS

There are presently pending before this Court plaintiff's motion for payment of expenses concerning the post trial deposition of Mr. Barecki and defendant's motion to strike portions of said deposition.

During trial it was brought out that defendant had sent the wrong model seats to plaintiff for certain tests to be performed for trial. Upon learning of this, the Court ordered defendant to supply the appropriate seats, and further allowed plaintiff to conduct tests and further depose Mr. Barecki concerning those tests. Upon consideration, the Court shall grant plaintiff's motion for an award of expenses in the amount of Three thousand, two hundred ninety-seven dollars ($3,297.00) only. The remainder of plaintiff's motion is denied.

## THE '226 PATENT

The '226 Patent (see diagram, next page) was designed by Mr. Barecki around April, 1970. Said patent contains six claims, Claims 1 and 6 being independent, and Claims 2 through 5 being dependent upon Claim 1. Said claims disclose two side-by-side seats, 11 and 12, which are both mounted upon a beam 13. Said beam 13 is provided at one end with an angle iron 14 for connecting the beam to a vehicle wall. The beam 13 is supported at its center by a pedestal which includes an upright column 15. The bottom of column 15 is provided with a tubular foot 16, extending fore and aft of the vehicle. The ends of the tubular foot 16 are cut on a 45 degree bias as shown at 17 to define access openings in the tubular foot leading to the fastening bolts used to secure foot 16 to the floor. The access apertures may be selectively covered by plates 20 which are releasably retained in positions by a U-shaped spring plate 23, having lugs 21 received in apertures 22 in the foot 16.

FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

INVENTOR
Chester J. Barecki

BY Dawson, Tilton, Fallon
and Lungmus
ATTORNEYS

It is the assertion of plaintiff that said structure provides the advantages of better clearance between seats, resulting in ease of cleaning the floor, increased leg room, increased storage space, and provides ease and safety in egress and ingress to the passengers.

The specific claims in issue of the '226 Patent read as follows:

"Claim 1

"A multiple-passenger transit vehicle chair comprising: a chair frame with an aisle side and a wall side, said frame supporting a plurality of passenger chairs side-by-side, mounting means on said wall side of said frame for securing said frame to a vehicle wall; a single pedestal cooperating with said wall to support said frame, said pedestal being spaced at an intermediate location between said wall side and said aisle side of said frame and including an upright column rigidly connected at its top to said frame; a hollow tubular foot member integral with the bottom of said column and extending forwardly and rearwardly therefrom, said foot having a generally flat bottom plate resting on the floor of said vehicle and provided with a bolt hole adjacent each end thereof to receive floor fastening bolts securing said foot to the vehicle floor at forward and rearward positions relative to said column, said tubular foot member further defining forward and rear access apertures adjacent their associated bolt holes to permit access to said fastening bolts when they are received in said bolt holes; said first and second closure means removably attached to said foot to cover said access apertures of said foot member respectively and cooperating with said hollow foot member to enclose said fastening bolts when said closures are assembled to said foot while permitting unrestricted tool access to said fastening bolts when said closures are removed.

"Claim 2

"The structure of Claim 1 wherein said column of said pedestal is located at the approximate longitudinal and transverse center of the seat portion of said frame and wherein said mounting means comprises flange means attached to said frame for securing the same to the vehicle wall.

"Claim 3

"The structure of Claim 1 wherein said tubular foot member has a rectilinear cross section with open forward and rear ends providing said access apertures, said access apertures extending at an inclination relative to the horizontal from the bottom plate of said foot member upwardly and towards said column member, thereby permitting vertical as well as side tool access.

"Claim 4

"The structure of Claim 1 wherein said frame comprises a cross beam extending longitudinally of said chair, and wherein said mounting means comprises a rail carried by said cross beam, said structure further comprising a pair of seats mounted upon said cross beam in side-by-side relation.

"Claim 5

"The structure of Claim 3 wherein said closure means comprise first and second end plates covering respectively said front and rear inclined access apertures of said hollow rectilinear foot member.

"Claim 6

"A two-passenger transit vehicle chair comprising: a chair frame with an aisle side and wall side, first and second chairs carried by said frame in side-by-side relation; mounting means securing the wall side of said frame to an upright vehicle wall; a single pedestal supporting said frame and including an upright column member connected to said frame at its approximate longitudinal midpoint and an integral hollow tubular foot member extending fore and aft of said chair from the bottom of said column member, said wall mounting means and said pedestal being the only support for said frame and said chair, said foot having a generally

rectilinear cross section and having forward and rear open ends defining forward and rear access apertures, each of said open ends being inclined from the bottom of said foot upwardly and towards said column; first and second fastening bolts attaching said foot member to said floor of said vehicle at locations adjacent respectively said forward and rear access apertures, said bolts extending at least partially within said hollow foot members; and first and second cover members releasably attached to said hollow foot member to cover respectively said forward and rear access apertures, said access apertures extending from the side of an associated fastening bolt over and above the same to permit unrestricted tool access to a fastening bolt when the associated cover is removed."

## PLAINTIFF'S AND DEFENDANT'S ARGUMENTS

Plaintiff asserts that its patent is valid and defendant's seat models 1059, 1060, the "Old 1070", and the "New 1070"[1] infringe the patent in suit. Plaintiff asserts that Models 1059 and 1060 were sold in 1973 and directly infringe upon the patent in suit as well as both the New and Old Model 1070 developed generally in 1973 and sold in 1974 and 1975, which also read directly upon the patent in issue.

Plaintiff further alleges that the National models mentioned above are essentially copies of the '226 Patent and further claims that National's seat design and development were copied from American's patented product.

Defendant asserts that plaintiff's patent is invalid pursuant to Title 35 U.S.C. § 102 as it was anticipated by the prior art and was obvious pursuant to Title 35 U.S.C. § 103 to one skilled in the art at the time the invention was assertedly made. Finally, defendant argues that plaintiff should be estopped from asserting infringement against defendant because of plaintiff's conduct before the Patent Examiner in failing to point out the best prior art available.

Further, defendant National asserts that the development of its seat models and foot designs were independent of any development or patent of plaintiff.

## VALIDITY

Upon consideration and as will be discussed below, it is the determination of this Court that the patent in suit, United States Letters Patent No. 3,729,226, is invalid as it was anticipated by prior art, was obvious to those skilled in the art at the time it was invented, and further as it fails to particularly describe that which is claimed to be invented.

The Court turns first to the issue of validity of the '226 Patent under Title 35 U.S.C. § 102. Title 35 U.S.C. § 102 reads, in pertinent part, as follows:

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ."

This section of the Patent Law has been generally referred to as anticipation. As stated by the Sixth Circuit in the case of

---

1. Defendant's "Old 1070" includes a foot with a 45 degree angle cut at its ends defining an access aperture to a bolt hole for a bolt fastener. The "New 1070" includes a foot with a straight cut end and a welded flange attached thereto. Since the 1070 model thus encompasses two different foot designs, which this Court finds to be of possible consequence to a finding of infringement (see discussion below), they shall be dealt with separately.

*Allied Wheel Products v. Rude*, 206 F.2d 752, 760 (6th Cir. 1953):

"In order to anticipate an invention, it is necessary that all the elements of the invention or their equivalents be found in one single description or structure, where they do substantially the same work in substantially the same way."

Plaintiff asserts that none of the prior art cited to the examiner nor any of that presented by defendant at trial illustrates all of the elements of the invention in one single description.

As stated by plaintiff in its brief:

"The elements of the Barecki patented chair cannot be found in any one alleged prior art reference cited by National. Not one of the alleged references including the Greyhound Tour Coach seat, the American rounded base pedestal seat, National's 1025–31 seat, National's 1039, 1040 seat, Heywood Wakefield's pedestal, Mitchell's table, Howell's sequence seating, the S. Karpen seat, and the remaining others of the 46 alleged references discloses the combination of (1) a frame supporting a plurality of chairs side-by-side; (2) a mounting means for securing the wall side to a vehicle wall; and (3) a special single pedestal specifically defined in the claims as including an upright column, and a hollow tubular foot member integral with a column. Further, none of such alleged references show such a combination with the hollow tubular foot member extending forwardly and rearwardly from the column and having a flat bottom plate with bolt holes at the ends securing the foot to the vehicle floor at the forward and rearward positions, said foot also having access apertures adjacent the bolt holes to permit access to the bolts, and said foot having closure means removably attached to the foot to cover the access apertures of the foot member and cooperating with the foot members to enclose the fastening bolts when the closures are assembled to the foot while permitting unrestricted tool access to the fastening bolts when the closures are removed." Plaintiff's Post Trial Brief filed May 3, 1976, pages 87 to 88.

However, defendant asserts that there are several seats which have been designed, manufactured and sold which anticipate the '226 Patent. The first such seat is known as the Greyhound Tour Coach Seat, (see diagram next page) manufactured, designed and sold by National to Greyhound. Said Tour Coach seat includes side-by-side recliner seats 11 and 12 supported on frame beam 13, having aisle side 13–A and wall side 13–B and mounting means 14 provided to secure the wall side of the frame to the vehicle wall. Frame 13 is also supported by a pedestal P, including a column 15 and a foot 16. Such foot 16 includes a circular bottom plate 16–A welded to the bottom of the upright column and four spaced gussets 16–B interconnecting the column 15 and the bottom plate 16–A. The bottom plate 16–A has four equally circumferentially spaced countersunk mounting holes 19–A therein to receive fasteners to secure the same to the vehicle floor. The foot 16 is selectively covered by a two-piece shroud 20, 20–A, joined by screws 21, such shroud acting to conceal the four spaced fasteners. The above described pedestal P can be positioned at the center of the seat frame for some seats or in an intermediate position between the center of the frame and the aisle side for other seats.

NATIONAL CENTER PEDESTAL
TOUR COACH SEAT (1955-6)

DETAIL OF NATIONAL'S PEDESTAL
FOR TOUR COACH SEAT

The Tour Coach seat was developed by National in 1955 and 1956, and was sold to Greyhound. The Court specifically finds that said seat was not experimental in nature and was, in fact, sold through regular means by defendant to Greyhound for use on a transit vehicle. Further, this Court specifically finds that the Tour Coach center pedestal seat includes all of the advantages asserted by plaintiff in its patent, including aesthetic considerations, ease in cleaning, increased leg and storage room, increased ease in maintenance, and increased ease for passenger ingress and egress.

This Court does not agree with plaintiff's analysis of the prior art. As stated above, the Greyhound Tour Coach seat provides for a frame supporting a plurality of chairs side-by-side and a mounting means for securing the wall-side to a vehicle wall. Further, said seat provides for a single pedestal, including an upright column. It thus appears that plaintiff's argument regarding the lack of anticipation is based upon its contention that the tubular foot of the '226 Patent is distinguishable from the round base foot of the Greyhound Tour Coach seat. It is the determination of

this Court that said assertion is untenable and an insufficient basis upon which to distinguish the prior art. The tubular foot of the '226 Patent and the round based pedestal of the Greyhound Tour Coach seat are found to be equivalents of one another as they perform substantially the same function in substantially the same manner. *Tee-Pak v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir. 1974).

Further, this Court finds that American's 1969 round based center pedestal seat with concealed fasteners anticipates the '226 Patent in suit. (See diagram below.)

AMERICAN ROUND BASE
CENTER PEDESTAL SEAT (1969)

DETAIL OF AMERICAN ROUND
BASE PEDESTAL AND COVER

Such seat includes two side-by-side transit seats 11 and 12 mounted on a tubular beam 13, having an aisle-side 13-A and a wall-side 13-B. Such wall-side of the frame is provided with a flange means 14 to secure the frame to the vehicle wall. The center pedestal P is provided to support frame 13 in conjunction with the wall mount, such pedestal including an upright cylindrical tubular column 15 and a cast foot 16 extending fore and aft of such column. Such foot 16 includes a plurality of counter-sunk holes 19-A adapted to receive floor fasteners 19 to secure the pedestal to the floor. The cast foot was selectively covered by a two-piece stainless steel shroud 20, 20-A interconnected by screws 23, such shroud acting to conceal the fasteners.

The only difference between American's round based center pedestal seat and the seat disclosed in the '226 Patent consists of the use of a round based foot instead of a tubular foot. Otherwise the 1969 round based pedestal seat is identical to the seat disclosed in the 1971 patent application, as was admitted by Mr. Barecki during his testimony.

It is the determination of this Court that said center pedestal seat offers all of the advantages asserted by plaintiff to be in its '226 Patent, i. e. ease in egress and ingress, ease in cleaning, and better storage and foot space. Further, it is the determination of this Court that the evidence and testimony establishes that American's round based center pedestal seat was sold to General Motors in October of 1969 as evidenced by Defendant's Exhibit EJ and another sale of such seats was made to General Motors in May and June of 1970, as evidenced by Defendant's Exhibit EO. It is the conclusion of this Court that said seats were sent to General Motors for installation in a bus for actual demonstration purposes to the public, and that such seats were billed and paid for and were not provided for testing purposes, nor were they provided under any secrecy agreement. As was stated by the Sixth Circuit in the case of *Minnesota Mining & Manufacturing Co. v. Kent Industries, Inc.,* 409 F.2d 99, 100 (6th Cir. 1969):

"It is settled law that a single public use [citation omitted], or only a placing on

sale [citation omitted] is sufficient to invalidate a patent under 35 U.S.C. § 102(b)." .

■ This Court is convinced that the prior public uses and sales by American to *General Motors* were not experimental but were basically designed to test the commercial market and to promote American's product. See *Cataphote Corp. v. DeSoto Chemical Coatings, Inc.,* 235 F.Supp. 936 (N.D.Cal.1964), aff'd, 356 F.2d 24 and 358 F.2d 732 (9th Cir. 1966), cert. den., 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966). See also *Smith et al. v. Sprague,* 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141 (1887); *Solo Cup Co. v. Paper Machinery Corp.,* 240 F.Supp. 126 (E.D.Wis.1965), reversed in part on other grounds, 359 F.2d 754 (7th Cir. 1966); *Dunlop Co. Ltd. v. Kelsey-Hayes Co.,* 484 F.2d 407 (6th Cir. 1973).

As plaintiff has failed to illustrate any functional difference between the round based foot and that claimed in the '226 Patent, and as this Court is unable to find any, this Court finds that said feet are equivalents. It is, therefore, the determination of the Court that the American 1969 Round Base Pedestal seat anticipates the '226 Patent.

Therefore, this Court finds that both the Greyhound Tour Coach seat and the American 1969 Round Base Pedestal seat anticipate the '226 Patent in suit.

The Court next turns to the issue of obviousness under Title 35 U.S.C. § 103. Assuming, arguendo, that plaintiff's patent was not anticipated, it is the determination of this Court that said patent is invalid as it would have been obvious to one skilled in the art at the time the invention was made under Title 35 U.S.C. § 103. Said section provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

■ Prior art patents may be combined pursuant to this section to determine the issue of obviousness.

"It is well settled that claims may be properly rejected on a combination of several patents taking specific features from each. It is not necessary that a complete disclosure be contained in a single reference." *Application of Bisley,* 197 F.2d 355, 362, 39 CCPA 982 (1952)

Further:

"All elements of the prior art have a bearing upon the question of invention; it being unnecessary to a finding of lack of invention that every element be found in one embodiment." *Ohmer Fare Register Co. v. Ohmer et al.,* 238 F. 182, 187 (6th Cir. 1916)

The Court must first note that plaintiff's patent is addressed to a combination of old elements. There is no question that placing two chairs side-by-side on a frame attached to a beam supported by some means was known in the prior art. There is no question that it was known in the art that transit vehicle seats could be supported by attaching one side to the wall while providing a support for the remainder of the seating arrangement. Further, there is no question that seat manufacturers skilled in the art at the time that the invention was claimed to have been made were aware of a single pedestal seat supports for seating.

Specifically, Mr. Barecki had worked on the BART (Bay Area Rapid Transit) project which used cantilevered and semi-cantilevered seats. The Steinbeck Patent 1,096,-518, the Del Giudici Patent 3,480,240, the Krehbiel Patent 474,666, and the Kohler Patent 1,281,793, all prior art patents, provide for center of intermediate pedestal seats. Further, inverted T Pedestals were known in the seating art previous to the date of the invention. See the Blink Patent 198,218 and Howell sequence seating chairs. The Hozeski and Barecki Patent 3,567,281

disclosed an inverted T-type pedestal which illustrates advantages concerning maintenance reduction and concealed fasteners to avoid dirt collection. The Greyhound Tour Coach seat, the BART seats, National's 1040 leg, the plugs used in the Heywood Wakefield Plane Mate seat, and the stainless steel cover used by American on its round base center pedestal seat all illustrate the use of selectively covered floor fasteners.

It is the determination of this Court that the prior art shows the entire combination as reflected in the '226 Patent. All of the elements of the patent were old. Further, the elements used by Mr. Barecki in the '226 Patent were all present in the art directly related to transportation seating field or to furniture products field in American Seating's line.

As noted above, the only significant difference between the '226 Patent and the prior art is the structure of the support column and the foot of said patent. It is the opinion of this Court that the design of plaintiff's column and foot on the '226 Patent is obvious in light of the Heywood Wakefield inverted T Plane Mate pedestal (see diagram below). The Wakefield pedestal includes a tubular type upright to support chairs or seats and a channel shaped foot extending fore and aft therefrom. Such foot is provided with base plates at each end thereof, such base plates being provided with holes to receive floor fasteners.

BARECKI PATENT

HEYWOOD WAKEFIELD INVERTED T PLANE MATE PEDESTAL (1969)

Access is provided to such floor fasteners by the foot defining fore and aft inclined apertures which are selectively covered by caps held in place by spring fingers.

The evidence illustrates that this pedestal was used in a Plane Mate Mobile Lounge in November of 1969, and that such pedestal and the lounge in which they were used were publicly demonstrated in Port Washington, Pennsylvania. It further appears from the evidence received that Heywood Wakefield was selling these pedestals for large production runs as of August, 1969.

■ The test as to obviousness has been set forth by the Supreme Court in the leading case of *Graham v. John Deere Company,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Therein the Court stated:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. *Graham v.*

*John Deere Company,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966)

Pursuant to the test established by the Supreme Court in the *John Deere* case, this Court finds that as a matter of fact the research and development personnel of both National and American are indicative of the level of ordinary skill in the art of transit seating. Mr. Barecki, Mr. Edwards and Mr. Owens have all been involved in the transportation seating industry since the late 1940's. Further, it appears from the record that Mr. Barecki, Mr. Hogan and Mr. Hozeski have had extensive experience in the field of furniture products including theater and sequence seating. It is the determination of this Court that the experience in the general seating and furniture fields can easily be applied from one area to another.

This Court is of the determination that plaintiff's patent would have been obvious to those skilled in the art at the time the invention is claimed to have been made. The Court bases this determination upon consideration of the American round base pedestal, National Tour Coach seat, the Howell sequence seating seats, the Heywood Wakefield inverted T Plane Mate Pedestal, as well as the other prior art patents mentioned above.

The Court finds that said seats and prior art patents clearly show all of the elements claimed by plaintiff in its '226 Patent. As stated above, the seating structure itself was not new and would have been obvious to anyone skilled in the art of transit seating or seating in general. The seat support claimed in the '226 Patent is extremely basic and was identical to that in the American Round Base Pedestal seat offered for sale in 1969. The pedestal, as mentioned above, is the only part of the claimed patent that in any way adds or is claimed to have added any new element to the seating structure. Even a cursory glance at the Heywood Wakefield inverted T Plane Mate Pedestal, used in 1969, indicates an almost identical structure as that claimed by plaintiff in its patent. Plaintiff asserts that the Heywood Wakefield inverted pedestal provides for a channel at the bottom of the

foot as opposed to a hollow tubular foot. The Court finds this distinction to be without merit, as the same function and use results from the Heywood Wakefield inverted T Plane Mate Pedestal as does that in the plaintiff's invention in the '226 Patent.

■ Plaintiff contends that the pedestal of the patent in suit is distinguishable from the round base pedestal of the Tour Coach seat, as well as all other round base pedestals, and is unique in its function and advantages from round base pedestals. The Court cannot agree with this conclusion. This Court finds that the round based foot and the foot of the '226 Patent in suit are the functional equivalents of one another, and that the '226 foot does not function in any new or different mode, nor does it provide any new or different result.

As stated by the Sixth Circuit, in the case of *Philips Industries, Inc. v. State Stove and Manufacturing Company,* 522 F.2d 1137, 1141 (6th Cir. 1975):

"Given that the individual claim elements are old and disclosed in the prior art, if this device is to be patentable then there must be that 'impalpable something', *Harvey v. Levine,* 322 F.2d 481, 485 (6th Cir. 1963), in the combination itself that would render the invention unobvious. The Supreme court decisions require that patents for the combination of old elements receive special scrutiny 'with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements.' *Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). The concept of 'synergistic result,' which is 'when the whole in some way exceeds the sum of its parts,' has evolved to determine what constitutes the 'key requirement,' of patentability. *Anderson's-Black Rock v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 60–61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Great Atlantic & Pacific Tea Co., supra,* 340 U.S. at 152, 71 S.Ct. at 130.

"There is nothing in the record which indicates . . . any new or unex-

pected cooperative result. . . . However, both of these benefits function independently. Each element operates as well separately as it does in combination, and as in *Anderson's-Black Rock, supra,* 396 U.S. at 60, 90 S.Ct. at 307, the combination 'though perhaps a matter of great convenience, did not produce a "new or different function," *Lincoln Engineering Co. v. Stewart–Warner Corp.,* 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 within the test of validity of combination patents.' "

■ Upon consideration of the prior art cited to the Patent Office and the prior art cited to this Court in the instant case, it is the determination of this Court that there is nothing in the record which indicates any new or unexpected cooperative result in the patent in issue, and that therefore there is no synergistic result produced by the '226 Patent.

The Supreme Court has recently spoken in this area in the case of *Sakraida v. Ag Pro Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976). In that decision, the Supreme Court stated:

"We cannot agree that the combination of these old elements to produce an abrupt release of water directly on the barn floor from storage tanks or pools can properly be characterized as synergistic, that is, 'result[ing] in an effect greater than the sum of the several effects taken separately.' *Anderson's-Black Rock v. Pavement Co.,* 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258, 261 (1969). Rather, this patent simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations. Such combinations are not patentable under standards appropriate for a combination patent. *A & P Tea Co. v. Supermarket, etc. Co., supra; Anderson's-Black Rock v. Pavement Co., supra." Sakraida, supra,* 425 U.S. at 282, 96 S.Ct. at 1537.

■ So, too, the '226 Patent simply rearranges old elements with each performing the same function it had been known to

perform. Such a combination is not patentable.

■ It is further the opinion of this Court that the prior art cited and applied by the examiner during the course of the prosecution of the patent in suit was not the best prior art available. Said prior art did not include any showing of the overall combination claimed, a center pedestal for a two passenger transportation seats or concealed fasteners for such pedestals. It is thus the determination of this Court that since the examiner was not aware of the best prior art, the presumption of validity is weakened, as opposed to strengthened. See *Holstensson v. V–M Corporation,* 325 F.2d 109 (6th Cir. 1963); *Westinghouse Electric Corporation v. Titanium Metals Corporation of America,* 454 F.2d 515 (9th Cir. 1971), cert. den., 407 U.S. 911, 92 S.Ct. 2439, 32 L.Ed.2d 685 (1972).

■ Plaintiff attempts to argue that the pedestal and foot in the patent in suit provide improved energy absorption characteristics and are more crash-worthy than any such pedestals or feet in the prior art. A great deal of testimony and evidence was received in regards to the safety factors asserted by plaintiff to be inherent in the '226 Patent. However, it is the determination of this Court that consideration of the safety factors is inappropriate as a justification for patentability of the '226 Patent.

The asserted inherent safety features of the seat design of the '226 Patent relate to the upright column and foot design and would necessarily relate to the tensile strength, gauge, size, shape, and type of material used in said upright column and foot. The patent in issue is silent as to any such references. In the Sixth Circuit case of *Cole v. Sears, Roebuck & Co.,* 520 F.2d 673 (6th Cir. 1975), the court therein, in dealing with an argument that the plaintiff's patent therein, Claims 7, 8, and 9, represented a novel and patentable system of placing certain slots for air induction, stated:

"If on the other hand, as plaintiff-appellant Cole contends, the air induction system through the 'slots' about the drip pan, depends for its effectiveness on the number, size and location of said slots, such features must be disclosed both as limitations upon the patent and as a means of teaching its art. 35 U.S.C. § 112 (1970). Finding no such specifics in the broadly stated elements, we hold, as we did in *Kaiser Industries Corp. v. McLouth Steel Corp.*, 400 F.2d 36 (6th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969), and *Philips Industries, Inc. v. State Stove and Mfg. Inc.*, 522 F.2d 1137, at 1140–1141 (6th Cir. 1975) that the patent is invalid for lack of particularity in the claims as required by 35 U.S.C. § 112 (1970):

" 'The patent law does not require a prospective inventor to search so far in attempting to determine the scope of a patent and the areas left open for inventive inquiry. Section 112 provides that it is the claims that shall *particularly point out* and *distinctly* [emphasis in original] claim the subject matter of the patentee's invention. Certainly, terms used in the claims can gain meaning from the specifications or from the knowledge attributable to one skilled in the art. But a prospective *inventor is required to go no further in attempting to determine the invention claimed and the areas foreclosed to future enterprise* . . .

" 'In our view of this case, the Appellants ask this Court to ignore the precision of definition required of them by the statute. As the Supreme Court noted in *Union Carbon v. Binney & Smith Co.*, 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232 (1942), to allow claims "so indefinite as not to give the notice required by the statute would be in direct contravention of the public interest which Congress . . . recognized and sought to protect." In that case the Court considered a product patent where the distinction from the prior art was a matter of degree. The Court rejected terms, such as "substantially

pure," "commercially uniform," and "comparatively small," that gave no standard for comparison or were so indefinite as to have no established meaning to one skilled in the art. *Kaiser Industries Corp. v. McLouth Steel Corp., supra* [400 F.2d] at 50–51.' " *Cole, supra*, at 675.

■ It is the determination of this Court that, as in *Cole, supra*, if plaintiff is to assert safety considerations as a basis for patentability, there must be sufficient description in the patent to substantiate said claims and to delineate for future inventors that area which is claimed to be within the patent. The Court has reviewed the patent in issue and has found that it is totally silent as to any considerations of safety or advantages in regards thereto.

Title 35 U.S.C. § 112 states:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

■ Since the '226 Patent is silent in regards to any feature of energy absorption or safety features, such considerations cannot be considered by this Court. If plaintiff bases patentability of its patent on these features, the patent is invalid as failing to particularly point out and distinctly claim that which it alleges is the subject matter of its patent pursuant to Title 35 U.S.C. § 112.

## INFRINGEMENT

■ The Court next turns to the issue of infringement. It is the opinion of this Court that said issue is moot as the Court

has above found plaintiff's patent to be invalid. However, in the interest of judicial economy, the Court shall consider the evidence presented and make factual determinations on the issue of infringement.

The Court first notes that in responding to the charges of invalidity, plaintiff has asserted and attempted to adopt a very narrow construction of its claims of its patent, thereby attempting to distinguish relevant prior art from said claims. However, this Court notes that in urging infringement, plaintiff has adopted a pattern of attempting to read its claims more broadly to include the devices manufactured by defendant National. Plaintiff cannot urge a narrow construction concerning the validity and a broad interpretation in asserting infringement. Consistent readings of the patent in issue must be utilized by the Court in determining both validity and infringement. See *Dunlop Company, Ltd. v. Kelsey-Hayes Company*, 484 F.2d 407 (6th Cir. 1973).

Interpreting the claims of plaintiff's patent broadly, this Court comes to the conclusion noted above that the '226 Patent is invalid as it has been anticipated by prior art, as it is obvious or would have been obvious to those skilled in the art at the time the invention was made, and, if based in part or in whole upon the inherent safety factors, that it fails to state with particularity the invention claimed by the patentee.

Assuming *arguendo* that this Court were to construe the claims of the '226 Patent more narrowly, and assuming that such a reading would render said claim valid, such a reading would result in a finding of infringement by defendant National's 1059, 1060, and "Old 1070" seats.

In this regard, the Court first notes that all of National Seating's seats which have an aisle support or use the support pedestal in the aisle position do not infringe plaintiff's '226 Patent. Plaintiff's patent is addressed to a seat support at an intermediate or center position between the wall and the aisle side. Thus excluded from the claims of the patent are those seat supports which are placed at an aisle position. Plaintiff

has attempted through various testimony and arguments to convince this Court that all of defendant's seats have their pedestals in an intermediate position. The Court finds plaintiff's arguments to be totally without merit.

Defendant argues that it does not infringe the '226 Patent, as said patent is addressed to transit chairs. Defendant asserts that recliner chairs do not fit into the description of transit chairs and that therefore one of the elements of the claims has not been infringed. However, this Court finds defendant's argument to be without merit.

The patent law provides that a patentee can be his own lexiocographer. See *Ellipse Corp. v. Ford Motor Co.*, 452 F.2d 163 (7th Cir. 1971). Thus, a patentee can utilize his own terms and define them for use in his patent as long as he remains consistent in his position. *Universal Oil Products Co. v. Globe Oil and Refining Co.*, 137 F.2d 3 (7th Cir. 1943), aff'd, 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944). Although it is unclear as to the exact definition of the term "transit" as used by plaintiff in its patent, this Court finds that the general and normal definition of said term would apply to both the inter-city and intra-city bus seating field and that therefore both stationary back and recliner back seats would be included in said term.

The Court notes that Plaintiff's Exhibit 132, which is a catalogue of American Seating's products, includes references to the following categories: driver seats, transit seats, school bus seats, non-recliner seats, and recliner seats. However, upon further review of this catalogue, it appears that American Seating uses the term transit seat in not only the transit category, but also in its non-recliner and recliner sections. Therefore, it appears to this Court that it is the consistent position of plaintiff American that the term transit seat includes both recliner and non-recliner seating arrangements.

Defendant also argues that its Old and New 1070 Models do not infringe plaintiff's

patent as the upright pedestals of said models are not connected to the frame that runs from the aisle to the wall transverse of the bus. Defendant asserts that in its seat the upright column is connected to two members of the frame which run longitudinally, not transversally, of the bus and that thereafter there are three beams that run transversally of the bus to support the seat.

It is the opinion of this Court that said argument is without merit as the actual support mechanism, whether it be attached directly to the beam or whether it be attached to two small metal pieces which are thereafter attached to a beam, is in essence the functional equivalents of one another and that therefore such a distinction is without merit.

Defendant further argues that its New Model 1070 does not infringe plaintiff's patent, asserting said seat pedestal has a different foot design than that disclosed in the '226 Patent. National's New Model 1070 foot design indicates a foot which is square cut on its ends and has an attachment flange welded thereto and extending outwardly from such square cut end. Such flanges are totally exposed from the tube and provide holes to receive the floor fasteners. Further, such exposed attachment flanges are each selectively covered by a four-wall closure cap. Defendant asserts that such a design permits better access to the fastening bolt and provides other advantages, to wit: a shorter overall foot, thereby improving ingress and egress, reduction in cost because of less material being utilized and easier installation of the pliable cap as well as the elimination of sharp corners.

Defendant asserts that the independent Claims 1 and 6 of plaintiff's patent include limitations describing the access apertures to the fastening bolts as being in or defined by the tube of the foot. Such limitations are not present in the New 1070 Model seat. Defendant further asserts that plaintiff, in its original application to the Patent Examiner, defined the foot as "being cut away at its upper end portions provide vertical access to said vehicle floor . . ." See Plaintiff's Exhibit 119. Said description was rejected by the Examiner who relied upon the combination of several patents including the Koch Patent 2,947,554 for its showing of a tube cut away at its end. The Patent Examiner held that it would have been obvious to make the ends of the pedestal feet as taught by Koch in his patent.

Plaintiff, upon submitting what was finally accepted to be the design for the foot in the '226 Patent, attempted to distinguish the Koch Patent on the basis that the fastener hole 29 and the attachment tab 27 of the Koch Patent were not within the tube as defined in the amended '226 claim, and that the ends of tube 23 in the Koch Patent did not define "an access aperture adjacent the associated bolt hole" as required by the Barecki claims.

The Court determines that plaintiff's arguments to the Patent Examiner in the prosecution of its patent foreclose the argument presently made to this Court urging infringement of defendant National's design. The Court determines that plaintiff is excluded by file wrapper estoppel from attempting to argue in the instant case that defendant's foot, almost identical to that described in the Koch Patent, infringes the '226 Patent. The Court therefore determines that National's "New Model 1070" seat does not infringe the claims of plaintiff's '226 Patent.

Further, upon review, it is the determination of this Court that all the elements of plaintiff's '226 Patent are included in the 1059, 1060 and the "Old 1070" seats manufactured by National.

Thus, were plaintiff's '226 Patent valid, there would in fact be infringement by defendant National's seat Models 1059, 1060 and "Old 1070", but only for those seats of said models in which the pedestals were placed at a center or intermediate position. The Court specifically finds that those seats of Model 1059, 1060, and the "Old 1070", where the pedestals were placed in an aisle position, would not and do not infringe plaintiff's '226 Patent.

## CONCLUSIONS

Therefore, this Court having found plaintiff's patent invalid under Title 35 U.S.C. § 102 as having been anticipated by the prior art; as being obvious to one skilled in the art at the time the invention was made under Title 35 U.S.C. § 103; and further having found that if plaintiff bases its contention of validity in part or in whole upon safety factors, the patent does not particularly point out and describe the invention claimed by the patentee as required by 35 U.S.C. § 112, this Court hereby finds for the defendant and against the plaintiff. This Court specifically finds United States Letters Patent No. 3,729,226 to be invalid and unenforceable.

Plaintiff to pay costs.

IT IS SO ORDERED.