Gordon H. ALLEN and the Dow Chemical Company, Plaintiffs-Appellants,

v.

### W. H. BRADY CO., Defendant-Appellee.

### No. 73–1200.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1974.

Decided Dec. 27, 1974.

Rehearing Denied Feb. 10, 1975.

---

Sidney J. Walker, Dow Chemical Co., Midland, Mich., Sidney Wallenstein, Chicago, Ill., for plaintiffs-appellants.

Britton A. Davis, Chicago, Ill., Donald G. Casser, Milwaukee,. Wis., for defendant-appellee.

Before PELL, STEVENS and SPRECHER, Circuit Judges.

STEVENS, Circuit Judge.

The Dow Chemical Company, as the assignee of Prosser, received a patent on a simple method of warning excavators of the presence of underground utility lines.[1] A strip of colored polyethylene film is buried in the backfill above the line where it will be brought to the surface by subsequent excavation.[2] Pros-

---

[1] Patent No. 3,282,057 on Underground Line and Method of Installing Same, issued November 1, 1966, pursuant to application of Adam W. Prosser, assignor to The Dow Chemical Company, filed July 12, 1961.

[2] Claims 2 and 5 of the patent read as follows:

"2. In a method for the installation of buried lines which comprises excavating a trench, placing a line within said trench, and backfilling said trench, the improvement which comprises partially backfilling said trench to a predetermined level, placing within the trench a tearable plastic indicating sheet and subsequently completing the backfilling operation.

\* \* \* \* \* \*

"5. The method of claim 2, wherein the plastic indicating sheet is a polyethylene plastic indicating sheet."

ser's invention was admittedly anticipated by Law, but as a result of an interference with a still earlier application, Law did not obtain a patent and never developed his idea commercially. The principal question presented by this appeal is whether the bar to patentability found in 35 U.S.C. § 102(g) was avoided by an abandonment of Law's application before the Prosser patent issued.[3]

The district court rejected defendant's § 102(g) argument, but held the patent invalid as obvious. Finding a lack of candor in the processing of the application, the court awarded attorney fees to the defendant. We do not reach the obviousness issue because we find the patent invalid under § 102(g); we disagree with the conclusion that this is an exceptional case in which fees should be awarded to the infringer.

In order to set forth the essential facts we need only refer to three patent applications. The earliest of the three, the Allen application, did not specifically teach the use of polyethylene film or other plastic strips. The language in the Allen claim referred to "a readily frangible colored body" as a warning device;[4] in practice, Allen was using such materials as colored oxide, sand, or powder. However, the generic language in Allen's application was construed by the Patent Office also to encompass the use of plastic film which was expressly taught in the Law application.

As already noted, Law's application anticipated the invention claimed by Prosser. Law, however, did not receive a patent because an interference was declared between his specific application and the earlier generic application filed by Allen. After the decision in the interference proceeding in December of 1973, which awarded priority to Allen, Law made no effort to develop his idea commercially. However, Allen, who had admittedly learned of the idea of using polyethylene film from the Law application, did promptly commercialize it: he sold the product himself and licensed others to use it under his generic claims.

Prosser conceived the same invention independently. Nevertheless, it is clear that the invention had previously been conceived by Law and was already the subject of a pending patent application.[5] Plaintiff makes no claim that Law abandoned his invention before Prosser discovered it or before Prosser filed his application. The abandonment argument rests entirely on Law's acquiescence in the adverse ruling in the interference proceeding with Allen which preceded the issuance of the Prosser patent.

3.  Section 102(g) reads as follows:
    "§ 102. Conditions for patentability; novelty and loss of right to patent.
    "A person shall be entitled to a patent unless—
    *   *   *   *   *   *
    "(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

4.  Claim 2 of Patent No. 3,155,861 (the Allen patent) entitled Locating Elements of Construction Beneath the Surface of Earth Soils, which issued on December 31, 1963, pursuant to application filed February 29, 1960, reads as follows:

    "2. An area of earth soil carrying at least one element of construction positioned from about 5 to 15 feet beneath the surface of said earth soil and a readily frangible colored body beneath said surface and in a position about 1 to 2 feet and extending over the lateral extent of said element of construction a distance of about one to several feet in each direction, said colored body carrying a substantially water-insoluble coloring material the color of which contrasts with that of the surrounding earth soil whereby to facilitate the location of said element of construction."

5.  In his application, filed on August 22, 1960, Law stated that he had "found that polyethylene strip is ideally suited for this purpose since it remains substantially in its initial condition over long periods of time even when emersed in damp and highly acid soils and since it may be readily colored with vivid and distinctive hues, such as bright yellow and chartreuse." Defendant's Exhibit p. 2.

## I.

For two reasons we hold the patent invalid under § 102(g). The critical language of that section provides:

"A person shall be entitled to a patent unless—

\* \* \* \* \* \*

"(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it."

■ As we read this language, the abandonment is irrelevant unless it occurred "before the applicant's invention." The use of the pluperfect tense—"had not abandoned"—plainly refers to an abandonment which occurred "before the applicant's invention."

■ Moreover, the concept of abandonment contemplates a voluntary decision by the original inventor to terminate any effort to practice his conception. In some circumstances abandonment of a patent application by acquiescing in an adverse ruling by the Patent Office might amount to an abandonment of the invention, but certainly not in the circumstances disclosed by this record. For the invention itself had no more been abandoned than if Law had assigned his interest in it to Allen. The practical effect of the interference ruling was to give Allen, rather than Law, the opportunity to profit from Law's idea. Since there was no abandonment of the invention, and since Law's failure to participate in its exploitation was not voluntary, we do not believe he "abandoned" his invention within the meaning of § 102(g). Certainly he did not do so "before the applicant's invention."

## II.

■ The district court found that Dow and Allen were guilty of a lack of candor in connection with the processing of the patent application and therefore awarded attorney fees pursuant to 35

U.S.C. § 285.[6] We are persuaded that this finding is not supported by the record.

The district court found that relevant prior art had not been cited by Dow and that the Allen patent was not cited as prior art by the Examiner. We agree with Dow that the Allen patent was clearly the most relevant prior art and the record does establish that it was brought to the attention of the Examiner. We attach no particular significance to the fact that several months passed after Dow became aware of the Allen patent and before it was cited, since the Examiner plainly had ample time in which to consider its relevance. The Examiner's decision not to cite the Allen patent as a reference is not attributable to Dow.

We have also carefully considered the suggestion that the patent is tainted by Allen's conduct. Allen purchased plastic tape from Dow, accepted an exclusive license under the Prosser patent from Dow, and granted sublicenses to licensees under the Allen patent. Assuming, without deciding, that the net effect of the relationship would have been to extend the practical useful life of Allen's patent by three years (since the Prosser patent issued three years after Allen's), our holding of invalidity adequately vindicates the public interest. We are also persuaded that there was no failure by Allen to make any disclosure either to Dow or to the Patent Office which affected the integrity of the Patent Office proceedings. This is not an "exceptional case" within § 285.

Accordingly, the portions of the Judgment Order entered on December 26, 1972, holding the patent invalid and unenforceable, and awarding normal costs to the defendant (paragraphs 1 through 4), are affirmed; the portion of said judgment awarding attorney fees to the defendant (paragraph 5) is reversed.

Affirmed in part and reversed in part.

6. Section 285 reads as follows:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."