**CMI CORPORATION,**
**Plaintiff-Appellant,**

v.

**BARBER–GREENE COMPANY,**
**Defendant-Appellee.**

No. 81–2733.

United States Court of Appeals,
Seventh Circuit.

Argued May 4, 1982.

Decided July 19, 1982.

---

Drew Neville, Linn Helms Kirk & Burkett, Oklahoma City, Okl., for plaintiff-appellant.

Clarence J. Fleming, McDougall, Hersh & Scott, Chicago, Ill., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, and LARSON,* Senior District Judge.

BAUER, Circuit Judge.

This appeal arises from a dispute over the validity of three CMI patents. The patents

---

* The Honorable Earl R. Larson, Senior Judge of the United States District Court for the District of Minnesota, is sitting by designation.

describe machines used to repair paved roadway surfaces. All three patents were invalidated in the course of the litigation in the district court. Additionally, the district court found CMI guilty of fraud in the prosecution of one of the patents and awarded Barber-Greene attorney fees incurred in defending the infringement claims relating to that patent. We affirm.

The three patents involved are: patent 4,139,318 (Jakob patent); patent Des. 225,-986 (Steele patent); and patent 4,140,420 (Swisher patent). Prior to trial, in response to Barber-Greene's summary judgment motion, the Swisher patent was declared invalid. The issues of liability and damages relating to the Jakob and Steele patents were separated for trial.

The liability issue was tried before a jury. At the close of CMI's case-in-chief, the district court found that CMI had failed to present sufficient evidence that the Steele patent had been infringed. Accordingly, it granted Barber-Greene's motion for a directed verdict as to the Steele patent. The issue of whether the Jakob patent had been infringed was submitted to the jury. The jury found the Jakob patent invalid for obviousness and returned ten special verdicts in favor of Barber-Greene.

Thereafter a bench trial was held on the issue of whether CMI was guilty of fraud and bad faith in prosecuting the patents. The district court concluded that there was no fraud with respect to the Steele or Swisher patents but that the Jakob patent was invalid not only for obviousness, but also because of CMI's lack of candor before the Patent Office. It held that CMI's failure to cite pertinent prior art during its prosecution of the Jakob patent justified an award of attorney fees under 35 U.S.C. § 285, which permits an award of "reasonable attorney fees" in "exceptional cases."

## I

While CMI does not challenge the judgment invalidating the Jakob patent, it does challenge the finding that it committed fraud in obtaining this patent. CMI contends that the award of attorney fees is improper because the finding of fraud was clearly erroneous.

The district court predicated its finding of fraud on CMI's failure to cite several pertinent prior art items: (1) the Snow patents, 3,802,525 and 3,946,506; (2) the TR–225 machine; (3) the Rein, Schultz & Dahl and University Asphalt machines; and (4) the Payne machine.[1] CMI owns the Snow patents and the TR–225 machine. The TR–225 machine incorporated many of the elements of the Snow patents and added a vertically adjustable moldboard which was connected to the conveyor system. The other machines, the Rein, Schultz & Dahl machine and the University Asphalt machine, were modifications of the TR–225 machine and incorporated many of the elements of the Jakob patent.

■ CMI concedes that it was aware of the uncited prior art items but maintains that it is not guilty of fraud because it disclosed the Snow patents, which, in turn, referred to the TR–225 machine. Alternatively, it asserts that neither the Snow patents nor the TR–225 machine were pertinent prior art. Further, it maintains that the patents it did cite were equivalent to, and, thus, as pertinent as, the Rein, Schultz & Dahl machine, the University Asphalt machine or the Payne machine.[2] For these

1. CMI believes that the district court based its finding of fraud primarily on CMI's non-disclosure of the Snow patents. In contrast, Barber-Greene believes the district court based its finding of fraud on CMI's failure to disclose the TR–225 machine and the modified versions of that machine, Rein, Schultz & Dahl machine, the University Asphalt machine, and the Payne machine. Barber-Greene states that the finding of fraud was not based on the failure to disclose the Snow patents and that the district

court referred to CMI's handling of the Snow patents to show that the TR–225 machine was never revealed to the Patent Office. It is unnecessary for us to determine which of these readings is correct since we find that neither the Snow patents, the TR–225 machine, or the modified versions were adequately disclosed.

2. Relying, in part, on *Allen v. W. H. Brady Co.*, 508 F.2d 64 (7th Cir. 1974), CMI argues that the fact that the examiner did not cite the prior patents does not establish that he did not con-

reasons it alleges that there was no extraordinary misconduct warranting an award of attorney fees.

Both parties agree that the clearly erroneous standard applies, *Scheller-Globe Corp. v. Milsco Manufacturing Co.*, 636 F.2d 177 (7th Cir. 1980), and that a finding of fraud sufficient to support an award of attorney fees must be established by clear and definite proof. *Landau v. J. D. Barter Construction Co., Inc.*, 657 F.2d 158 (7th Cir. 1981). To support a finding that this case falls within the scope of § 285, the evidence must establish not only that the prior art items were withheld, but that they were more pertinent than the cited art. *Sarkes Tarzian, Inc. v. Philco Corp.*, 351 F.2d 557, 560 (7th Cir. 1965). Mindful of these principles, we consider the evidence in relation to each prior art item allegedly not disclosed.

### A. CMI's Prior Machines

CMI insists that the Snow patents, covering trimmer type road construction machines fitted with connected reclaimer systems to remove excavated earth, were disclosed to the examiner. In support of this contention, CMI states that it referred to the Snow patents five times in the Jakob Application and that the patent examiner would have seen these references upon reading the application. Relying on a Patent Office Survey taken in 1976, CMI argues that the procedure it followed in citing the Snow patents, that of referring to the patents by number only, is the usual citing procedure. It claims that it had no duty to include more detailed explanations discussing differences between the prior patents and the claims in the Jakob Application.

There is substantial evidence in the record that CMI did not fully disclose the Snow patents or its TR–225 machine. Although CMI did cite the Snow patents five times, it did so in a manner which created the impression that only certain component parts of the Jakob method and apparatus were taught in the Snow patents while at the same time obscuring the more relevant fact that the Snow patents described machines remarkably similar to that described in the Jakob patent. *See* Jakob Patent, Column 5, lines 49–51; Column 6, lines 5–6, 12–14, 57–63; and Column 6, line 68 to Column 7, lines 1–8.

Moreover, when CMI submitted an amendment to the Jakob Application with a description of approximately fifty prior art items representing the results of "an extensive patent search to determine the state of the art of road planing apparatus," Amendment of October 25, 1976 to the Jakob Application at 8, cited in appellee's br. at 30, it did not refer to the Snow patents. The Snow patents describe an improved trimmer type road construction apparatus with a reclaimer assembly for removing excavated earth. Yet, although CMI submitted copies of all the cited patents in the Amendment to the examiner, it never submitted copies of the Snow patents. CMI attempts to explain this omission by emphasizing that the Snow patents were in the Patent Office's files. Surely, the other cited patents were also in the Patent Office's files, yet CMI went out of its way to ensure that the examiner had copies of them. CMI's failure to include the Snow patents in its description of the state of the art of road planing apparatus, considered in conjunction with the failure to submit copies of the Snow patents, raises a strong inference of willful nondisclosure.

CMI argues that it cited the Snow patents properly and that the Snow patents brought the TR–225 machine to the examiner's attention. The Patent Office Survey on which CMI relies to substantiate its claim that the Snow patents were cited in

---

sider them. We agree with CMI's statement of the law, but disagree as to how that law applies here. In *Allen* the record showed that the most relevant prior art was brought to the attention of examiner. Therefore, the examiner's decision not to cite the relevant prior art was his decision and not attributable to the patent holder's lack of candor in processing its application. In contrast, there is no evidence in this case that the examiner was aware of the most pertinent prior art. Thus, his failure to cite the undisclosed patents leads to the inference that he was unaware of these items.

the usual manner states that 46% of all allowed applications cite no prior art items and indicates that another 40% of the applications cite prior art as CMI did, only in the specification portion of the application. CMI emphasizes that of the 40% which cited the prior art items in the specification portion of the application, 70.6% did so in the same manner as CMI, by referring to those patents by numbers only. These statistics, CMI argues, establish that in listing the Snow patents by number in the specification portion of the Jakob Application, CMI did "far more to call these patents to the examiner's attention than the 46% of the 1976 patentees who cited no prior patents" and that "in citing the patents by number, CMI was disclosing the patents in the same way as 28.24% of all 1976 patentees." Appellant's br. at 26.

This argument is pure sophistry. CMI neglects to explain that the survey evaluated citing procedures for patents falling in two categories: (1) prior art and (2) background material. The citing procedure CMI used was the procedure commonly employed to cite background material. Yet, CMI fails to mention this distinction or to explain why it categorizes its prior patents as background material instead of prior art. This is merely one example of CMI's misleading "allusions to and half-disclosures of the prior art." *CMI Corp. v. Barber-Greene*, No. 79 C 1684 (N.D.Ill. Sept. 28, 1981) at 12. These "allusions" and "half-disclosures" support a finding of fraud. *See Mooney v. Brunswick Corp.*, 663 F.2d 724 (7th Cir. 1981).

Moreover, CMI's argument that it was not required to cite the Snow patents or the TR–225 machine because they were not pertinent prior art is not persuasive. CMI contends that it did not cite these machines because they did not disclose a floating moldboard. This argument fails; none of the patents CMI cited had floating moldboards.

A comparison of the claims and drawings of the Snow patents and the Jakob patent establishes that they are very similar to each other. None of the eleven patents cited by the examiner or the over fifty patents cited in the Jakob Amendment are as similar. Barber-Greene's expert witness testified that the Snow patents were more pertinent than the cited patents. Tr. at 784. His testimony was undisputed. There is ample evidence that the Snow patents were more pertinent than the cited prior art.

CMI contends that the Tr–225 machine is no more pertinent than the cited prior art because the TR–225 is equipped with an adjustable moldboard as opposed to the floating moldboard described in the Jakob patent. CMI contends that an adjustable moldboard is different from a floating moldboard and, thus, had no relevance to the Jakob Application. It distinguishes the two moldboards on the basis of function. It states that the floating moldboard is designed to float continuously in a scraping position in relation to the surface of the pavement, whereas the TR–225's adjustable moldboard digs into and excavates the road surface, thereby reducing wear on the machine. CMI emphasizes that, in contrast to the Jakob apparatus, the adjustable moldboard is not designed to float over depressions or elevations in the road surface. It concludes that the adjustable feature was included in the TR–225 machine simply to increase the efficiency with which it digs into a surface and that this function has no relationship to the floating function of the Jakob moldboard. Appellant's br. at 29.

We cannot agree. A determination of whether an item constitutes pertinent prior art requires that the invention be evaluated as a whole as well as by its individual elements. *See Forbro Design Corp. v. Raytheon Co.*, 390 F.Supp. 794 (D.C.Mass.1975), aff'd 532 F.2d 758 (1st Cir. 1976). The flaw in CMI's argument is that it emphasizes the differences between the floating moldboard of the Jakob apparatus and the adjustable moldboard of the TR–225 machine while ignoring the fact that both pieces of equipment are designed to plane road surfaces and remove the excess surface material by similar means, employing a movable moldboard as part of the reclaimer means. Tr. at 673.

The primary difference between the Jakob apparatus and the earlier TR–225 machine is that the Jakob apparatus was adapted to plane asphalt and concrete surfaces, surfaces which are harder than earth or crushed rock surfaces. As a result, various modifications were made. The teeth of the Jakob apparatus were made of stronger material, the hydraulic system was strengthened to provide more power, and the TR–225's adjustable moldboard was adapted to float on the road's surface. Even CMI's expert admitted that the engineering concept underlying the floating moldboard was well-known.

The TR–225 machine is more pertinent than the cited prior art for two reasons. First, the relationship between the moldboard and the reclaimer means is the same in the TR–225 as the relationship taught in claim 1 of the Jakob patent. Tr. at 673. Second, the Jakob apparatus is merely the result of the application of known engineering concepts applied to the TR–225 machine and incorporates more elements of the Jakob patent than any of the cited patents. Since the Jakob claims would not have been allowed if the examiner had known of these CMI machines, they were unquestionably more pertinent than the cited art. Tr. at 785–787.

## B. The Rein, Schultz & Dahl and University Asphalt Machines

We agree with the district court that CMI's failure to cite its own machines alone is sufficient to support a finding of fraud. Assuming *arguendo*, however, that these omissions do not constitute clear and convincing evidence of fraud, we find that CMI also breached its duty of candor by failing to cite the CMI machines which it sold to, and were modified by, Rein, Schultz & Dahl and University Asphalt. Instead of citing these machines, CMI cited the Austin, Walker, and Swisher patents, which it argues, combined all the elements of, and are equivalent to, the uncited CMI modified machines.

This argument was considered and rejected by the district court, which held that the fact that the modified CMI machines combined all the elements of the Austin, Walker, and Swisher machines made them "vastly more pertinent" than the cited prior art. CMI disputes the district court's conclusion because it insists that the floating moldboard is the critical element of the Jakob machine and that citing machines which successfully combined non-moldboard features could have had no effect on the examiner's decision to allow the Jakob patent.

By omitting references to the Rein, Schultz & Dahl and University Asphalt machines, CMI created a mistaken impression as to the state of the prior art which made it impossible for the Patent Office to assess the Jakob Application adequately. *In re Multidistrict Litigation Involving Frost Patent*, 540 F.2d 601 (3d Cir. 1976). The examiner, unaware of machines which had already successfully combined many of the elements of the Jakob apparatus, may have believed that the idea of combining these elements and then incorporating the floating moldboard constituted a creative invention worthy of legal protection. On the other hand, had the examiner realized that all the elements except the floating moldboard had already been successfully combined, he may have concluded that the Jakob Application was obvious. We decline to speculate as to how knowledge of the modified CMI machines would have affected the examiner's decision, but it is clear that CMI did not satisfy its duty of full and complete disclosure when it failed to cite these more pertinent machines. *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 600 (3d Cir.), *cert. denied*, 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817, *reh. denied*, 409 U.S. 899, 93 S.Ct. 108, 34 L.Ed.2d 158 (1972). Under the circumstances here, where the initial claims of the Jakob Application had already been rejected for obviousness and where CMI had full knowledge of the existence of these modified machines which it had not cited in the original application, CMI was obliged to cite them in the Amendment.

## C. The Payne Machine

Similarly, CMI's argument that it did not cite the Payne machine because it was un-

aware of the model which had a floating moldboard and, therefore, did not consider the Payne machine pertinent prior art also fails. Both parties devote a substantial portion of their briefs to a discussion of whether CMI was aware of the West Coast model which had the floating moldboard. Not surprisingly, CMI denies knowledge of this model; Barber-Greene insists that the details of this machine were known to Jakob while he was a CMI employee and that CMI is charged with Jakob's knowledge.

While neither party's contentions is completely supported by the record, there is ample evidence that either model of the Payne machine constituted pertinent prior art and should have been cited. An industrial engineer who had been employed by Payne testified that there were some design differences between the East Coast model and the West Coast model. He stated that the basic difference was the means by which the scraper blades, or moldboards, were secured. The moldboard of the West Coast machine was held down by gravity, permitting the moldboard to float. In contrast, the East Coast machine was equipped with a hydraulic cylinder which transferred the weight from the machine to the scraper blade in order to facilitate the scraping action. In each machine, however, the free moving blade was created by the amount of weight applied to it. It is not significant whether this weight was caused by gravity or the transfer of weight. The important fact is that both machines operated in substantially the same manner, tr. at 400–04, and that both had moldboards which were more similar to the Jakob moldboard than any of the cited patents. Thus, the Payne machine was more pertinent than cited prior art and exceedingly relevant to a determination of whether the floating moldboard was obvious.

In fact, the inventor of the Jakob machine considered the Payne machine so relevant that he traveled to the East Coast to study it. If the inventor considered the machine relevant to his invention, undoubtedly so would the examiner. Since, at the very least, CMI knew of the East Coast machine, it breached its duty of candor by not citing it.

There is no question that CMI was well aware of several prior art items which it had reason to believe were more pertinent to the state of the art at the time of the Jakob Application than the cited prior art. Its failure to cite these machines evidences a clear intent to hide information from the examiner which may have adversely affected CMI's Jakob Application. Failure to cite any one of these prior art items would support the award of attorney fees. Failure to cite all of them is far more than clear and convincing evidence of fraud.

## II

The last consideration[3] is whether the district court erroneously granted a directed verdict against CMI on the issue of the validity of the Steele patent. In support of its charge that Barber-Greene's machine infringed the Steele patent, CMI presented the following evidence in its case-in-chief: (1) the Steele patent, which is a design patent covering the appearance of a trimmer-spreader road construction machine; (2) a brochure published by Barber-Greene showing photographs of its RX–75 Dynophane machine, a machine similar to the Steele machine; and (3) a videotape showing the RX–75 machine in operation. In granting the motion for a directed verdict, the district court noted that, at most, the evidence established was that the two machines were visually similar. There was a complete absence of testimony, however, as to any infringement.

We concur. The mere fact that the two machines appear to be similar was

insufficient to allow the infringement issue to go to the jury. In order to prove infringement, the plaintiff must show that defendant engaged "in the same process steps in substantially the same way to accommodate substantially the same result." *Mooney v. Brunswick Corp.*, 663 F.2d 724, 736 (7th Cir. 1981), *citing International Glass Co. v. United States*, 408 F.2d 395, 400 (Ct.Cl.1969). CMI did not offer such evidence; the directed verdict in favor of Barber-Greene was proper.

Accordingly, the decision of the district court is

AFFIRMED.