**BEPEX CORPORATION,**
**Plaintiff-Appellant**
**Cross-Appellee,**

v.

**The BLACK CLAWSON COMPANY,**
**Defendant-Appellee Cross-Appellant.**

Nos. 80–3673, 80–3686.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 4, 1982.

Decided Aug. 1, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 19, 1983.

William G. Konold (argued), Cincinnati, Ohio, for plaintiff-appellant cross-appellee.

Nathaniel R. French (argued), Dayton, Ohio, for defendant-appellee cross-appellant.

Before EDWARDS, Chief Judge, MERRITT, Circuit Judge, and GIBSON, Senior Circuit Judge.*

GEORGE CLIFTON EDWARDS, Chief Judge.

In this appeal Bepex Corporation seeks to enforce Patent No. 3,447,450 for manufacture of a "cone press" known as the Wilhelm press. This record shows that the Wilhelm press was one of a number of presses designed with two rotating conical working faces, in which both such faces are mounted in juxtaposition to each other so that the press, when fed with certain materials, compresses those materials in a "pinch zone" at the narrow end of the wedge-shaped feeding zone. Among the uses for such presses are extracting juice from oranges and other fruits (*Ingalls,* Patent No. 2,617,354), crushing empty tin cans (*Edwards,* Patent No. 2,356,122), and dewatering paper pulp (*Messing,* Patent No. 2,793,-583 and No. 3,204,551).

These patents (and others) were issued before this patent controversy arose. With much prior art well known in the field, plaintiff Bepex's predecessor, Rietz Manufacturing Company, was engaged in making and selling cone presses which proved to be relatively unsatisfactory. Consequently the Rietz Manufacturing Company hired one Donald Wilhelm to design a better press.

Subsequent to Wilhelm's design, an application for a patent was made thereon and rejected. In the light of prior art, the Patent Office cited Ingalls, Bennett (Patent No. 2,789,618) and Messing as presses which anticipated the Wilhelm press and rejected the original two claims.

* Honorable Floyd R. Gibson, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Subsequently, Wilhelm submitted other claims the novel features of which may be summarized as follows:

(i) means serving pivotally to carry the *rear end portions* of the side structures on the frame;

(ii) each of the pair of opposed wheels journalled in the side structures includes *an annular plate forming the outer side of the wheel;*

(iii) *thrust bearing means interposed between the outer margins of said annular plates and said side structures.*

Based upon the new claims, the Patent Office issued the Wilhelm patent.

Defendant, The Black Clawson Company, purchased one of the Rietz presses and Bepex, the successor to Rietz, claimed copied, manufactured and began selling it. Black Clawson from the beginning asserted that all patentable features of the Wilhelm press were anticipated by the prior art, and that the Wilhelm patent was invalid because of such anticipation or because any novel features were obvious to one familiar with the art.

This case was tried before District Judge David Porter in Cincinnati without a jury. Judge Porter handed down a lengthy opinion holding that all of the claims in the patent were invalid.

The first issue in the case arises from the fact that the District Judge held that the first two claims of the Wilhelm patent were invalid on the doctrine of file wrapper estoppel. The second major issue could be phrased: Did the District Judge err in concluding that the subject matter of each of the claims of the Wilhelm patent was "obvious" to one skilled in the art? Appellant also raises other issues which we do not find it necessary to reach since we agree with the District Judge's well reasoned opinion on the obviousness issue. On cross-appeal, Black Clawson contends primarily that the court committed error in refusing costs to Black Clawson as the prevailing party under Federal Rule of Civil Procedure 54(d).

■ We first affirm the District Court's conclusion that the first two claims were barred from patentability by the doctrine of file wrapper estoppel. It is clear to us, as it was to the District Judge, that the first two claims of the patent in suit were the same two claims which appellant had withdrawn in the face of Patent Office objection. As to this issue we accept the District Judge's analysis and reasoning. Certainly his finding on this score is not "clearly erroneous." The other issues merit further discussion.

■ Our examination of the briefs and record of this case leads us to conclude that Bepex's predecessor, Rietz through its engineer Wilhelm, improved on the prior art in at least two, possibly three, respects. It is clear that Wilhelm developed and improved the method of opening the press for cleanout and servicing. It is clear that Wilhelm developed a more effective sieve to remove fluid from the press. It is clear also that Rietz developed a more effective chain and sprocket drive system for the two wheels. The result of these improvements is that the press was indeed a better press, as a number of Black Clawson's witnesses testified.

If the patentability of the claimed features of the Wilhelm press (other than those barred by estoppel) depended solely upon proofs of novelty and utility, we should indeed reverse Judge Porter. As indicated above, this record is replete with proofs that Wilhelm was hired to make and that he made a number of improvements in the original Rietz (P & L) cone press. But before Wilhelm's work began in 1965, patents had been issued for cone presses for many purposes—among others: extracting juice from fruits; pressing water from paper pulp; and crushing cans. The use of cone presses for many purposes was old in the art when Wilhelm was hired.

As Judge Porter pointed out:

"The patents relied on by Black Clawson to invalidate the Wilhelm patent include the following:

| Ingals | U.S. | 2,617,354 | 1952 |
| Bennett | U.S. | 2,789,618 | 1957 |
| Messing | U.S. | 3,105,434 | 1963 |
| Edwards | U.S. | 2,356,122 | 1944 |
| Thomson | U.S. | 2,872,256 | 1959 |

| Messing | U.S. | 3,204,551 * | 1965 |
|---|---|---|---|
| Silver et al. | U.S. | 3,431,839 | 1969 |
| Asplund | G.B.** | 897,024 | 1962 |
| Grandjean | French | 998,607 | 1944 |

\* Both Messing patents are assigned to Black Clawson. Messing '551 is alleged to be an improvement over Messing '434.

\*\* Great Britain.

Paragraph (73), Stipulation of Uncontested Facts. Of these references, only Ingalls, Bennett, and Messing '434 were cited by the Patent Office Examiner. *Ibid.*"

Most patent appeals in the United States Courts turn on the question, "Do the patent claims disclose a development which was not obvious to a person skilled in the art?" So does this appeal.

35 U.S.C. § 103 (1976) provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

In interpreting this statutory language chosen by Congress, we necessarily turn to the origin of patent laws in these United States in the constitutional provisions which govern all branches of our government. The Constitution of the United States, written at Philadelphia in 1787, Article I, Section 8 provides in part that "Congress shall have power ... to Promote the Progress of Science and useful Arts, by securing for limited times to Authors and Inventors the exclusive Right to their respective Writings and discoveries."

Thus constitutionally by the original compact of our people, Congressional power to grant a patent monopoly ("the exclusive right") was restricted—

1) to "Inventors"

2) for "their discoveries"

3) for "limited times"

4) "to Promote the Progress of the Useful Arts".

This represents rather detailed constitutional language for our Constitution. After all our laconic forefathers only used seven words—"to regulate commerce ... among the several states ..."—in order to create the enormous interstate commerce power.

The reason is found in the history of the period prior to the American Revolution. One of the many abuses which produced the Revolutionary War was the exercise by English Kings of the power to grant monopolies in business and commerce to their favorites. One freedom which the colonists sought in 1776 was freedom from monopolies.

There were writers and inventors among the founding fathers (Franklin and Jefferson, to name two). They clearly wanted to stimulate Progress in Science and the Useful Arts—but not at the risk of unbridled monopoly.

Thomas Jefferson, the father of patent law in this country said:

He who receives an idea from me, receives instruction himself without lessening mine; as he who lights his taper at mine, receives light without darkening me. That ideas should freely spread from one to another over the globe, for the moral and mutual instruction of man, and improvement of his condition, seems to have been peculiarly and benevolently designed by nature, when she made them, like fire, expansible over all space, without lessening their density in any point, and like the air in which we breathe, move, and have our physical being, incapable of confinement or exclusive appropriation. Inventions then cannot, in nature, be a subject of property. Society may give an exclusive right to the profits arising from them, as an encouragement to men to pursue ideas which may produce utility, but this may or may not be done, according to the will and convenience of the society, without claim or complaint from any body. VI Writings of Thomas Jefferson, at 180–181 (Washington ed.).

*Graham v. John Deere Co.,* 383 U.S. 1, 9 n. 2, 86 S.Ct. 684, 689 n. 2, 15 L.Ed.2d 545 (1966).

Clearly, "the will and convenience" of our society has granted patent monopoly rights but only "to inventors" for their "discoveries" and then only for a limited time.

With these principles in mind, we turn then to our ultimate question—whether Wilhelm's improvements either individually or taken together represent the sort of enhancement of prior art as to meet the non-obviousness standard of Section 103 of the Act. The Sixth Circuit has adopted the standards set forth by statute and Supreme Court case law which serve to answer this question. What we said in *Parker Sweeper Co. v. E.T. Rugg Co.,* 474 F.2d 950 (6th Cir.1972), appears to us to be applicable to the improvements made by plaintiff and plaintiff's predecessor:

> We agree with the District Court that Parker's lawn sweeper passed the first two tests of novelty and utility. It still must survive the test of Sec. 103 which provides: "A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains...." 35 U.S.C. § 103 (1970). As Mr. Justice Black put the matter in 1964: "To begin with, a genuine 'invention' or 'discovery' must be demonstrated 'lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art.'" *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 230, 84 S.Ct. 784, 788, 11 L.Ed.2d 661 (1964), and cases cited therein. It is against these standards that we review the validity of the instant patent and find it wanting.

*Parker Sweeper Co. v. E.T. Rugg Co.,* at 955.

Judge Porter began his review of the obviousness issue in this case as follows:

## VALIDITY

For the reasons which follow, it is the determination of the Court that claims 1 through 5 of the patent in suit, United States Letters Patent No. 3,447,450 are invalid, as they would have been obvious to those skilled in the art at the time it was invented.

This paragraph appears on page 20 of Judge Porter's opinion. He concluded his analysis of the obviousness issue on page 68. In the intervening pages he made a meticulous examination of each of the claims of Patent No. 3,447,450 against the prior art—particularly that disclosed in the Edwards, Messing, Ingalls, Silver and Asplund patents. He then held:

> We conclude, therefore, that Black Clawson has proven by a preponderance of the evidence that the subject matter of claims 1 through 5 of U.S. Patent No. 3,447,450, when compared to the pertinent prior art, would have been obvious to an individual having ordinary skill in the art in 1965. Since we are unable to construe those claims to exclude the prior art, we conclude that claims 1 through 5 of the Wilhelm patent are invalid. 35 U.S.C. § 103; *Eltra Corp. v. Basic, Inc.,* 599 F.2d 745 (6th Cir.), cert. denied, 444 U.S. 942 [100 S.Ct. 297, 62 L.Ed.2d 308] (1979). Thus, Black Clawson and its Fibercone press cannot be held for infringement of these claims.

Since we do not believe we should hold his findings of fact are "clearly erroneous" and cannot improve upon his reasoning, we adopt by reference the two paragraphs of his opinion quoted above and the 48 pages which intervene.

Similarly we have reviewed with care Judge Porter's discussion and rejection of Bepex's copyright and unfair competition claims. We find no merit to Bepex's appeal from the dismissal of these claims, and we affirm the District Judge's decision.

■ Turning finally to the appeal of cross appellant, Black Clawson, we hold that the District Judge acted within his discretion in denying costs to both parties.

Federal Rule Civil Procedure 54(d) provides:

**(d) Costs.** Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

This rule clearly does not mandate costs, and as the District Judge found, this case is not exceptional within the meaning of 35 U.S.C. § 285 (1976). *See Uniflow Manufacturing Co. v. King-Seeley Thomas Co.,* 428 F.2d 335, 341 (6th Cir.1970).