**Peter M. ROBERTS, Plaintiff,**

v.

**SEARS, ROEBUCK & CO., Defendant.**

**No. 80–5986.**

United States District Court, N.D. Illinois, E.D.

July 20, 1987.

John B. Davidson, Keith L. Davidson, Louis G. Davidson & Assoc., Chicago, Ill., for plaintiff.

James G. Hunter, Jr., Melissa A. Apcel, & Charles S. Treat of Latham & Watkins, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This patent infringement action is before this court for an appellate-style review of six grounds which the defendant believes led to an infirm verdict following the original trial of this case. For the following reasons, the court finds that none of these arguments has merit.

## I. THE DEVICE

The device at issue here is a quick-release socket wrench upon which plaintiff Peter Roberts obtained a patent in 1965. To a layperson, the principal difference between a conventional socket wrench and the quick-release socket wrench is that two hands are needed to remove a socket from the conventional wrench and replace it with a socket of a different size, while Roberts' device provides a means for releasing a socket and engaging another in a one-handed operation. The Seventh Circuit described the Roberts quick-release wrench in its most recent opinion in this case:

Shown below in Figure 1 is a conventional socket wrench. It consists of a handle (3) and a detachable socket (2). The pushbutton (1) on the head of the wrench corresponds with the pushbutton (also 1) on Roberts' quick-release mechanism shown below in Figure 2.... Although the Roberts quick-release mechanism retains the ball-type detent (4) utilized in the conventional wrench, in place of a spring directly behind the ball, Roberts uses a springloaded pin (5) that moves in the center of the stud (6). The pin contains a specially-shaped camming recess (7). "Selective alignment," a key feature of the Roberts device, refers to the type of ball and pin positioning that results from the "camming action" between the sloped recess of the pin and the curved surface of the ball. In the socket retaining position, small longitudinal movements of the pin result in changes of position of the ball with respect to the pin; the ball and pin can assume one of an infinite number of positions relative to one another depending upon the depth of the socket dimple. The ball will be cammed outward only as far as is necessary to engage the socket dimple. This "selective alignment" feature is claimed to offer unique advantages: it results in a smooth, reliable quick-release operation; it allows use of sockets with various dimple depths; it automatically compensates for socket wear; it prevents "hang up" of the ball detent; and it allows for one-handed operation in both removing and replacing sockets. To release the socket, the pushbutton (1) is depressed, moving the pin to the position where the ball can begin to move along the sloped recess of the pin. Once the ball is in the recess, the socket can fall of its own weight. With the pushbutton still depressed, a new socket may be slipped on and securely retained by releasing the pushbutton, all in one-handed operation.

FIG. 1

FIG. 2

*Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1336 (7th Cir.1983). As the Seventh Circuit stated, it is "easier to use the wrench than it is to understand what makes it easier to use." *Id.*

## II. PROCEDURAL HISTORY

Roberts filed suit against Sears, alleging that the latter's sale of Roberts-type wrenches after January 1977 and its sale of Orszulak wrenches beginning in 1980 infringed his patent. Following a trial before Judge Bua, Roberts won a substantial jury verdict. The Seventh Circuit, sitting *en banc*, reversed and remanded for a new trial, holding that the trial court improperly allowed the jury to determine whether the patent was invalid. *Roberts*, 723 F.2d at 1343. In particular, the Seventh Circuit found that the trial court improperly required the jury to decide the legal questions of the scope of the Roberts patent claim and whether the device was obvious. *Id.* at 1338, 1339. On remand, the case was assigned to Judge Decker. The plaintiff moved Judge Decker to reinstate the jury verdict, arguing that the Seventh Circuit's

decision on the obviousness issue conflicted with decisions from the Federal Circuit, which would hear any further appeals in this action. Judge Decker denied the motion, holding that he was bound by the Seventh Circuit's mandate.

■ The plaintiff then petitioned the Federal Circuit for a writ of mandamus ordering the district court to enforce the jury verdict. The Federal Circuit, reasoning that the obviousness question would be moot if other grounds, raised by the defendant on appeal but not reached by the Seventh Circuit, also warranted reversal, denied the petition "to allow the district court to review these other grounds." Judge Decker understood the Federal Circuit to intend a review of those issues in the context of a new trial, since an appellate-style review of the issues not reached by the Seventh Circuit, "conducted without regard for or in relation to the district court's trial function, [was] unheard of in [his] experience." This prompted the plaintiff to again seek mandamus from the Federal Circuit, this time on the ground that

Judge Decker was refusing to comply with the Federal Circuit's order. The Federal Circuit agreed and ordered the district court to determine whether a new trial was necessary on any of the grounds raised by the defendant but not decided by the Seventh Circuit. The case is now before this court for that purpose. Although I agree with Judge Decker that an appellate-style review of rulings of another judge on this court is unheard of, I am bound by the Federal Circuit's mandate to conduct just such a review.

## III. GROUNDS FOR A NEW TRIAL

The defendant has raised six grounds, in addition to those addressed by the Seventh Circuit, which it believes warrant reversal of the jury verdict. These grounds relate to the exclusion of Wilson as prior art, the invalidity of the patent as shown by prosecution history, the construction of the plaintiff's claim, the finding of infringement, references during the trial to a prior finding that the defendant committed fraud, and the finding of willful infringement. These grounds will be addressed *seriatim*.

### A. Wilson as Prior Art

First, the defendant argues that the trial court erred by striking a defense raised under 35 U.S.C. § 102(g) based on a prior invention of Harold H. Wilson. Wilson applied for a patent on a socket wrench on Septemer 9, 1963; his application was still pending when Roberts filed his application on April 24, 1964. On October 13, 1964, the Patent Office rejected Wilson's application as anticipated by the 1928 Carpenter patent. Wilson did not pursue his application further.

Section 102(g) provides:

A person shall be entitled to a patent unless—

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it.

This section embodies the principle that to be entitled to a patent, the applicant must be the first to have made the invention. *In re Katz*, 687 F.2d 450, 454 (C.C.P.A.1982).

However, prior conception alone does not defeat patentability; the invention must also be "reduced to practice." *Id.*

An invention may be reduced to practice by actually embodying the invention into a practical form, and this is technically termed an "actual reduction to practice." The other way to reduce an invention to practice is by filing an application for patent thereon, which is termed a "constructive reduction to practice." The invention is not completed until there has been actual or constructive reduction to practice. *All States Plastic Mfg. Co. v. Weckesser Co.*, 362 F.Supp. 94, 97 (N.D.Ill.1973), *aff'd*, 506 F.2d 465 (7th Cir.1974); *Popeil Bros., Inc. v. Schick Elec., Inc.*, 356 F.Supp. 240, 244 (N.D.Ill.1972), *aff'd*, 494 F.2d 162 (7th Cir.1974). Thus, Wilson's invention was constructively reduced to practice when he filed his patent application on September 9, 1963. The invention was apparently never actually reduced to practice; there is no evidence that Wilson ever built his wrench.

The plaintiff contends that constructive reduction to practice is effective only in interference actions under 35 U.S.C. § 135 and that only actual reduction to practice establishes priority or possession of the invention where patentability is at issue. This contention must be rejected, given the numerous cases in which constructive reduction was applied where patentability was at issue. *See, e.g., In re Katz*, 687 F.2d 450 (C.C.P.A.1982); *Allen v. W.H. Brady Co.*, 508 F.2d 64 (7th Cir.1974); *Bepex Corp. v. Black Clawson Co.*, 208 U.S.P.Q. 109 (S.D. Ohio), *aff'd*, 713 F.2d 202 (6th Cir.1983); *see also Leesona Corp. v. Varta Batteries, Inc.*, 522 F.Supp. 1304, 1338–39 (S.D.N.Y.1981).

The parties disagree over the effect of Wilson's abandonment of his patent application following the rejection by the Patent Office in 1964. The Federal Circuit has stated that

it has long been settled, and we continue to approve the rule, that an abandoned application, with which no subsequent application was copending, cannot be considered a constructive reduction to prac-

tice. It is inoperative for any purpose, save as evidence of conception.

While the filing of the original application constituted a constructive reduction to practice at the time, the subsequent abandonment of that application also resulted in an abandonment of the benefit of that filing as a constructive reduction to practice.

*In re Costello*, 717 F.2d 1346, 1350 (Fed. Cir.1983).

Sears believes that the timing of the abandonment is critical. Relying on the Seventh Circuit's decision in *Allen v. W.H. Brady Co.*, 508 F.2d 64 (7th Cir.1974), it argues that although Wilson ultimately abandoned his application, Wilson constitutes prior art was against Roberts, because the Wilson application was actively pending at the time Roberts filed his application. In *Allen*, the Seventh Circuit found, based on the language of 35 U.S.C. § 102(g), that abandonment is irrelevant unless it occurred before the applicant's invention. "The use of the pluperfect tense—'had not abandoned'—plainly refers to an abandonment which occurred 'before the applicant's invention.'" *Id.* at 67.

■ While there appears to be tension in the holdings in *Allen* and *Costello*, Judge Bua nevertheless properly excluded Wilson as prior art. In Sears' Motion for Summary Judgment Declaring Plaintiff's Patent Invalid, counsel for Sears stated that "abandoned patent applications are not 'prior art' in the technical sense and defendant does not rely on the Wilson application as prior art." That concession was repeated in Sears' Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment.

Sears acknowledges, as Roberts says, that the Wilson abandoned patent application and the Patent Office papers relating to it do not, of themselves, qualify as "prior art" under the law.

Sears explained that it wanted to introduce the Wilson application at trial only to demonstrate the Patent Office's interpretation of Carpenter, which was cited as a reference in the Wilson application. Based on these statements, Judge Bua struck the section 102(g) defense and permitted the

defendant to introduce Wilson for this limited purpose. In short, Sears' abandonment argument based on Wilson has been previously abandoned. Judge Bua's decision was not clearly erroneous.

### B. Invalidity by Reason of Prosecution History

■ Second, the defendant argues that the prosecution history memorialized in the file wrapper demonstrates that the Roberts patent is invalid as a matter of law. Robert's initial application contained four claims, all of which were rejected by the Patent Office as obvious in light of prior art, specifically Wendling and DePew. Roberts then filed an amended application containing a single claim. In support of the amended application, the plaintiff argued that his claim was superior to Wendling because of the push button and that DePew did not adequately disclose a push button conveniently located on top of a wrench. The Patent Office issued a patent based on the amended application. According to Sears, the examiner allowed Roberts' amended claim solely on the basis of the extension of Wendling's quick-release pin into a push button on the top of a wrench head, but that this precise feature was taught in prior art references, namely Carpenter, Gonzalez, and Wilson, and therefore, the Roberts patent is invalid.

This court has already determined that Judge Bua properly excluded Wilson as prior art. The plaintiff argues that numerous distinctions exist between Carpenter, which uses a spring arm to hold the ball detent, Gonzalez, which has a flange with a flat-locking platform, and Roberts, with its sloped camming surface. According to the plaintiff, neither Carpenter nor Gonzalez is a quick-release mechanism; rather, they were designed to effect a positive lock of the socket to the wrench. Moreover, neither discloses selective alignment or compensates for wear and tear on the sockets.

The defendant argues that these distinctions are irrelevant under *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) and its progeny. In *Graham*, the Patent Office examiner re-

jected the original claims of the application partially on the basis of prior art. After a series of amended claims, all of which were rejected, the applicant relied entirely on a single feature as the exclusive patentable device in his combination, and the examiner allowed the claim on that basis. *Id.* at 32, 86 S.Ct. at 701. In the subsequent infringement action, the Supreme Court said the invention must be construed not only in light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office. Also, allowed claims must be read and interpreted with reference to rejected ones and to the state of the prior art, and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent. *Id.* at 33, 86 S.Ct. at 701–02. Applying these principles to the facts before it, the Court concluded:

> Here, the patentee obtained his patent only by accepting the limitations imposed by the Examiner. The claims were carefully drafted to reflect these limitations and [the plaintiff] is not now free to assert a broader view of [the] invention. The subject matter as a whole reduces, then, to the distinguishing features clearly incorporated into the claims.

*Id.* at 34, 86 S.Ct. at 702; *see also Burland v. Trippe Mfg. Co.,* 543 F.2d 588, 591–92 (7th Cir.1976); *Union Carbide Corp. v. American Can Co.,* 558 F.Supp. 1154, 1156 (N.D.Ill.1983), *aff'd,* 724 F.2d 1567 (Fed.Cir. 1984).

While the defendant's statement of the law is unassailable, its application of that law to the facts of this case is not. The Roberts claim and file wrapper do not establish that the Roberts patent was granted solely on the basis of the extension of the quick-release pin into the push button at the top of the wrench. The language of the claim explicitly refers to "selective alignment" and describes the features which make Roberts a quick-release mechanism.

The phrase "selective alignment" was always present in the patent application. No words in the specifications nor items in the drawings were ever changed from the time the patent application was filed to the time that the patent issued. All distinguishing features incorporated into the claims, when considering the entirety of the invention, are appropriate both in determining patentability and the scope of the patent issued. That those distinguishing features may not have been the subject of discussion or contention by the patent office does not preclude their use in prosecuting rights afforded the owner of the patent.

Nothing in the prosecution history—neither the rejection of the initial application based on Wendling and DePew nor the amendment of the claim—suggests that any distinguishing features were eliminated from the subject matter of the patent. Thus, the distinctions between Carpenter and Gonzalez on the one hand and the device at issue here on the other are relevant because they indicate that some of the features which may be within the scope of the Roberts patent were not anticipated by prior art. Judge Bua was clearly correct in not holding to the contrary as a matter of law.

### C. Claim Construction

■ The Seventh Circuit has already determined that, at the original trial of this case, the trial court erred in requiring the jury to interpret the scope and identity of the Roberts patent claim. *Roberts,* 723 F.2d at 1338–39. Construction of a patent claim is a matter of law for the court. *Roberts,* 723 F.2d at 1338. However, claim construction may depend on underlying factual disputes, such as a factual dispute as to the meaning of a term of art used in a patent claim or where "complex scientific principles are involved." *Howes v. Medical Components, Inc.,* 814 F.2d 638, 643 (Fed. Cir.1987). The resolution of these factual disputes can be submitted to a jury. *Id.* at 1338–39 (citing *Super Products Corp. v. D P Way Corp.,* 546 F.2d 748, 756 (7th Cir. 1976)). In this case, the Seventh Circuit noted that some question existed as to the meaning of "selective alignment," suggesting that the definition of this term could

have been properly submitted to the jury. *Id.* at 1339 n. 18.

Sears argues that while this factual issue as to a term of art precludes resolution of the construction issue in the plaintiff's favor, the converse is not true. Sears believes that judgment may be entered in its favor on the ground that the claim interpretation advocated by the plaintiff is untenable as a matter of law, because it is not supported by the Roberts patent or its file wrapper.

Neither the plaintiff nor the defendant has clearly articulated the plaintiff's position on the scope and identity of his claim, and the problem of construing the plaintiff's claim is not presently before this court. Until the claim is defined, it is difficult to determine whether the claim is insufficient. However, the defendants raise one purely legal argument in their briefs: that if the essence of the plaintiff's claim is "selective alignment," the claim is insufficient because the selective alignment is not set forth in the claim, or even the specifications or drawings. *See, e.g., In re Self,* 671 F.2d 1344, 1348, 1350 (C.C.P.A.1982); *Arbrook, Inc. v. American Hospital Supply Corp.,* 645 F.2d 273, 276–77 (5th Cir.1981); *Lee Blacksmith, Inc. v. Lindsay Bros., Inc.,* 605 F.2d 341, 345 (7th Cir.1979). This argument can be readily dispensed with, since the selective alignment limitation is clearly set forth in the language of the amended claim. To the extent the defendant argues that the term "selective alignment" used in the claim language does not mean what the plaintiff contends it means, it has merely raised a factual question which must be resolved in the course of a new trial.

### D. Infringement

Infringement is a factual determination which must be based on a preponderance of the evidence. *Tyler Refrigeration v. Kysor Indus. Corp.,* 777 F.2d 687, 691 (Fed. Cir.1985). A finding of infringement will not be disturbed on appeal unless it is clearly erroneous. *Id.* The defendant argues that the finding of infringement cannot stand because it depends on a broad construction of the Roberts patent claim, a construction which is allegedly inconsistent with the narrow claim advocated by Roberts to support a finding of validity. In essence, the defendant contends that those features which distinguish Roberts from Carpenter and Gonzalez also distinguish the Sears wrenches from Roberts. Thus, if those distinctions are sufficient to support a finding of validity, they also preclude a finding of infringement.

■ "It is a fundamental principle of patent law that a claim may not be narrowly construed to avoid invalidity and then broadly construed to encompass the accused device." *Arshal v. United States,* 223 Ct.Cl. 179, 621 F.2d 421, 428 (1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). Rather, consistent readings of the patent in issue must be utilized in determining both validity and infringement. *American Seating Co. v. National Seating Co.,* 457 F.Supp. 444, 458 (N.D. Ohio 1976), *aff'd,* 586 F.2d 611 (6th Cir.1978), *cert. denied,* 441 U.S. 907, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979).

■ Sears conceded during its opening argument and again during the trial that its first design, the Roberts-style wrench, infringed the plaintiff's patent. Based on this concession, Judge Bua instructed the jury that, as to the first design, the question of infringement was "undisputed." Although the defendant now believes that the concession was ill-advised, it is not entitled to a new trial because of a change in its strategy. Because of the defendant's concession, the finding that the Roberts-type wrench infringed the plaintiff's patent was not clearly erroneous.

The plaintiff presented evidence that neither Carpenter nor Gonzalez afforded selective alignment, but that Roberts and both of the Sears wrenches include this feature. Thus, the jury could have properly concluded that the Roberts patent was valid and infringed by the Orszulak wrench. Of course, this conclusion may be affected by redefining the scope of the Roberts patent claim during the course of the second trial, but as this court has already stated, that question is not now before it.

### E. Fraud

■ Fifth, Sears argues that the "trial of this case was pervaded and tainted" by repeated references to a prior finding that Sears had induced Roberts to assign his patent rights to it through fraudulent and negligent misrepresentations. Prior to trial, the defendant proposed that the jury be advised that Roberts had already received $1,000,000 from the defendant. The plaintiff insisted that the jury also be told that the $1,000,000 was an award was based on a finding that Sears had defrauded him. Roberts also argued that the finding of fraud was directly related to the value, novelty, and commercial success of the Roberts patent and the issue of willful infringement.

Believing he had resolved the question in an equitable manner, Judge Bua instructed the jury at the outset of the trial:

In 1969, after Mr. Roberts attained his majority, he commenced a lawsuit against Sears alleging that Mr. Roberts had been induced to assign his patent rights to Sears by reason of Sears' fraudulent and negligent representations. The trial of that case ended on January 20th, of 1977. The jury returned a verdict in favor of Mr. Roberts and against Sears, Roebuck and found the plaintiff's damages to be one million dollars.

\* \* \* \* \* \*

The former lawsuit, ladies and gentlemen, between the parties does not involve any issue as to whether the Roberts patent was valid or invalid. That's what this case is about.

\* \* \* \* \* \*

The two issues, ladies and gentlemen, whether the Roberts patent is invalid and whether defendant has infringed it since January 20, 1977, are the only issues to be determined in this trial.

The plaintiff's attorney referred to the defendant's fraud on at least fifteen occasions during the trial. The defendant contends that these references were irrelevant and highly prejudicial.

The prior finding of fraud was relevant to show that Sears believed the Roberts patent was valid, a belief which not only undermines the defendant's position in this lawsuit, but also bears on the question of whether the defendant willfully infringed the plaintiff's patent. Relevant evidence may nevertheless be excluded if its probative worth is outweighed by its potential for undue prejudice. Fed.R.Evid. 403. A district court judge has broad discretion in determining the admissibility of evidence and may be reversed only upon a finding of abuse of discretion. *Kier v. Commercial Union Ins. Cos.*, 808 F.2d 1254, 1258 (7th Cir.1987). This court cannot conclude that Judge Bua abused his discretion in allowing the references to prior finding of fraud, given that the defendant itself had sought an instruction on the prior payment of damages and given the court's admonition that the only issues in the case were the validity and infringement of the *Roberts* patent.

There is no reason to believe that the jury could not follow the judge's limitations as to the prior trial or that it failed to do so. In fact, the fairer conclusion to be drawn is that the jury was not so prejudiced or inflamed as to have ignored the evidence and based its verdict on passion. The jury found that Sears had willfully infringed the patent when it made and marketed the first type of wrenches it produced but that the Orszulak wrenches, introduced several years after the beginning of the period of infringement in the instant suit, did not constitute willful infringement. Contrary to Sears' contention, the question of good or bad faith was one for the jury and not for anybody else. Neither Judge Leighton's actions, nor the Seventh Circuit's, operate to take the willfulness issue away from the jury as a matter of law. Additionally, it is worthy of note that Judge Bua, clearly recognizing the prior fraud verdict only for what it was worth and unencumbered by any notions of passion in favor of the underdog, saw fit to double the damage award for willful infringement.

### F. Willful Infringement

■ Finally, the defendant takes issue with the jury's finding that Sears willfully infringed the Roberts patent. A find-

ing of willful infringement is a finding of fact which can be reversed only if clearly erroneous. Fed.R.Civ.P. 52(a); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed.Cir.1983). To support a finding of willfulness, the fact finder must find more than that the infringing acts were not inadvertent; it must determine "that the infringer acted in disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a right to do the acts." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565 (Fed. Cir.1983). Thus, a good faith belief that a patent is invalid or not infringed, perhaps because the defendant believes it has the lawful right to use the invention will preclude a finding of willfulness. *Id.* A determination of good faith must be based on the totality of the circumstances presented in a case, and a defendant's reliance on counsel's advice on the validity of the patent in suit is among the factors to be considered. *Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed.Cir.1983).

 Here, the plaintiff presented ample evidence from which a jury could infer that the defendant's infringement was willful. This evidence included the advice of defendant's counsel, prior to issuance of the Roberts patent, that he thought the device was patentable; Sears' marking its wrenches with Roberts' patent number and promoting the wrenches as protected by the Roberts patent, and the great lengths to which Sears went—including fraudulent and negligent misrepresentations—to obtain Roberts' rights to the patent.

Sears argues that it could not have willfully infringed the patent from January 20, 1977, to April 3, 1978, because Sears owned the patent during that period. On January 20, 1977, Judge Leighton entered judgment on a jury's findings that Sears fraudulently induced Roberts to assign his rights to the invention to it and its award of $1,000,000 to Roberts. On April 3, 1978, the Seventh Circuit affirmed the judgment against Sears and the award of damages, but reversed Judge Leighton's determination that he lacked authority to order rescission of the agreement assigning Roberts' rights to Sears. *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976, 986 (7th Cir.), *cert. denied*, 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 168 (1978). On remand, Sears reassigned any and all rights in the patent which it had obtained pursuant to the original agreement. In a subsequent appeal, the Seventh Circuit held that this reassignment was effective on January 20, 1977, the date of the original judgment:

In order to avoid if possible any future misunderstanding, the effect of [the reassignment] will be that the defendant owned all of the patent rights from June 15, 1965 to January 20, 1977, and the plaintiff shall be considered the owner from January 20, 1977 on. The plaintiff will not be entitled to sue for any infringement occurring prior to January 20, 1977.

*Roberts v. Sears, Roebuck & Co.*, 617 F.2d 460, 475 (7th Cir.), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980).

The defendant argues that from January 20, 1977 to April 3, 1978, it was the adjudicated owner of the Roberts patent and that, therefore, it had a a good faith belief that it had the legal right to use the invention. Contrary to the defendant's assertion, Judge Leighton did not hold that Sears was the legal owner of the patent. Rather, Judge Leighton refused to reach the question of ownership, believing that the plaintiff's election of remedies barred any equitable relief. After a jury determined that Sears obtained the right to the Roberts patent through fraudulent and negligent misrepresentations, Sears no longer had a reasonable basis to believe that it had a legal right to use the invention. Thus, the jury's determination that Sears willfully infringed the patent even during the period January 20, 1977 to April 3, 1978, was not clearly erroneous.

## IV. CONCLUSION

Defendant Sears raised six grounds, in addition to those addressed by the Seventh Circuit, which it believes rendered the jury verdict and corresponding judgment infirm. After reviewing these grounds, and the

arguments in their support, this court concludes that Judge Bua's rulings on each of these issues were not clearly erroneous or contrary to law and that none of these grounds warrant a new trial.